ALLISON *v.* WALL.

</div>

1. The admission of opinion evidence is limited to those instances where, because of the complexity of the elements involved, it is impossible for the witness to detail all of the circumstances which lead his mind to a particular conclusion ; or where, because in a matter of science, special art, or particular occupation, persons inexperienced therein would be unable to reach a proper conclusion from a mere statement of the facts on which the expert based his opinion.
2. Where dates have not been specially noted, or time measured by a timepiece, it is competent for a witness to give his opinion as to how long a time elapsed between given facts.
3. It would likewise be proper to admit opinion evidence as to what would be a reasonable time for performing an unusual task or special work where all the elements and data for making the calculation could not be detailed to the jury or presented to them in such a way that they could themselves make the calculation.
4. But where, as in the present case, it was possible to state the data from which the jury could make a calculation, it was not admissible for an expert

to testify as to what, in his opinion, would be a reasonable time for the performance of the act under consideration.

5. The evidence objected to was also properly excluded because it sought to give the opinion of the witness as to the very matter in issue, and involved the witness's opinion not only as to what could be done, but also what, as a matter of law, should have been done.

6. A conveyance, in 1891, "of all the pine trees growing and being upon 4900 acres of land, for sawmill and turpentine purposes," included only those which were then suitable for such purposes, and not those which by growth subsequently came within the description of the original grant.

7. The charge objected to on the subject of returning and cutting was not error. Construed as a whole, and in connection with the succeeding sentence, the jury were instructed that the right could be exercised during the entire period covered by the "reasonable time," but that after all trees suitable for sawmill purposes had been cut, the plaintiff could not return and remove timber which was not originally suitable but which had subsequently become so.

8. The general verdict for the defendant was equivalent to a finding that the plaintiff had not removed the timber within a reasonable time, and therefore that all the trees, whether growing or lying on the ground, reverted to the grantor.

9. The verdict was supported by the evidence. There was no error requiring the grant of a new trial.

Submitted December 17, 1904. — Decided January 28, 1905.

Equitable petition. Before Judge Roberts. Dodge superior court. February 26, 1904.

J. H. Allison brought an equitable petition to enjoin Wall from cutting timber, and to recover damages for timber already cut. Both the plaintiff and the defendant claimed under a common grantor. The defendant claimed to be in possession under a conveyance from the heirs of Archibald McMillan. The plaintiff was a subtransferee and successor in title from his father, J. R. Allison; and the question involved depended mainly upon the construction to be given to the instrument of March 12, 1891, from Archibald McMillan to John R. Allison, whereby, in consideration of $3,000, McMillan granted, sold, and conveyed to John R. Allison "all the pine trees growing and being upon the certain tracts or parcels of land for sawmill and turpentine purposes." The land consisted of all of nine lots of 490 acres each, a hundred acres of lot 161, and 390 acres of lot 162. "To have and to hold the aforedescribed pine trees for sawmill and turpentine purposes," with the rights and appurtenances thereto; "also selling and conveying to said John R. Allison a right of way through and over said described lands for a tramroad, and the

right to cut at any time any pine trees for cross-ties, bridge or trestle timbers to be used in building and maintaining said tramroad, and the right to cut at any time any pine trees for raft oars and binders; and the said Archibald McMillan . . the said bargained pine trees for sawmill and turpentine purposes, and right of way for a tramroad, unto said John R. Allison, his heirs and assigns, forever warrants and defends against the claims of all persons by virtue of these presents." On April 16, 1891, Allison, in consideration of $5,969.00, sold to Buckley, his successors in trust, and assigns all the pine trees growing and being on the land above described, for sawmill purposes. Buckley conveyed his interest to Suydam; Suydam conveyed to Gray & Brother and Gray & Gatchell; and they conveyed to the Gray Lumber Company. Subsequently the Gray Lumber Company conveyed to J. H. Allison, the plaintiff, by deeds dated April 23, 1901, and June 12, 1901. Archibald McMillan died on June 22, 1901. Soon thereafter his heirs conveyed to Dickson & Dorminey certain of the timber involved, for sawmill and turpentine purposes, the same to be cut at pleasure within the period of ten years. The defendant Wall is in possession by virtue of license from Dickson & Dorminey. After the property came into the possession of the Gray Lumber Company, it permitted others to cut certain timber. Their operations ceased; and thereupon the Gray Lumber Company again entered and begun cutting some of the timber, but ceased operations. Under an arrangement with McMillan, J. R. Allison had been working the timber, and subsequently entered into the contract of 1891. Allison testified that he was in the turpentine business in Irwin county. This timber was used for turpentine purposes by Allison & Gasque. It ceased about three years before the trial. The plaintiff testified, that while he did not know how much timber J. R. Allison had in connection with a certain kind of business, it amounted to a large body, and that he operated his still there continuously; "do not know what time he cut and used this particular timber." He had two stills. Ten lots of land timbered like these lots would have been a pretty fair location for a small mill. It would have been about two years run for a small mill.

There was evidence that timber was boxed during three years for turpentine purposes, and that thereafter the trees were proper

to be used for sawmill purposes.     There is no evidence as to the accessibility, situation, or size of J. R. Allison's turpentine tracts or stills, or how large a body of land, if any, he controlled beyond that mentioned in McMillan's lease.     There was some evidence that McLeod & Co. and Linder, by permission of Gray & Bro., cut trees off the property in dispute, paying an agreed price as "stumpage," and that they did not cut all of the trees suitable for sawmill purposes.     There was evidence that the Gray Lumber Co. owned large tracts of timber; and it was claimed that they did not abandon the timber on the McMillan tract, but expected to cut it after sawing up the lumber on another tract across the Satilla river, on which their leases were about to expire.     There was a conflict in the evidence as to whether the trees left by McLeod & Co. and Linder were suitable for sawmill purposes under the conditions existing when the contract was made in 1891, it being claimed by the defendant that the timber was not suitable for such purposes ; and that what was left was actually abandoned, and subsequently became available and profitable.     There was evidence as to the entry on the land by Wall in 1901, and the number of cross-ties which he had cut from standing timber ; and evidence that he had cut and removed logs lying on the ground at the time when he entered.     Several witnesses testified that for the successful operation of a turpentine distillery it would be necessary to acquire a title to a large tract.     They varied in their estimates as to what would be necessary for this purpose, and as to the amount necessary to operate a sawmill.

The plaintiff propounded to several witnesses, who were experienced in the turpentine and sawmill business, the following interrogatory :   " What, in your opinion, would be a reasonable time for a sawmill owner to cut and remove the timber from land in the lease to which no time is limited within which to cut and remove the timber ?   State the reasons for such an opinion as to time for such removal."   The witnesses varied as to what would be a reasonable time, some saying twelve and some ten years.   In answer to a similar question other witnesses stated that ten or twelve, others six or seven, years would be a reasonable time within which to use timber for turpentine purposes where there was no time limit in the lease; that it is very expensive to move a turpentine distillery, moving the laborers and

building suitable houses to be occupied by them; that three or four years are occupied in the actual use of the timber, and it is impracticable to break up and move a turpentine distillery oftener than ten or twelve years, for the reasons stated. On objection by the defendant these questions and answers were excluded, and the court in its charge also instructed the jury that they were not to consider the opinion of any witness which may have been given in the testimony. To these rulings the plaintiff excepted. The plaintiff also excepted to the following instructions to the jury: (*a*) "If you find any of the trees were cut by the defendant and that they were pine trees, and that they were growing and being upon these tracts of land, then that must have been their condition at the time of the execution of that lease; if they were not trees at that time, and growing and being upon this land, of course they would not pass by the terms of this lease." (*b*) "I charge you to ascertain what mill timber is; and I charge you that under this lease the parties would have no right to exercise that right but once. One of the contentions of the defendant is, that the parties went upon this land and cut off all of the mill timber, and that afterwards there was an effort to go back on it after having been there one time. The contention of the plaintiff is, while they admit that they went there to cut off some of the timber, yet they did not cut off all of it, that they did not abandon it, but intended to go back. If you find as a matter of fact that they did go there and cut off all the timber suitable for sawmill purposes, then they would not be permitted to go back; this right can only be exercised one time." (*c*) "If you find the dead timber lying on the ground there was converted into cross-ties, that would not come within the description there of growing trees on the land, and the plaintiff would not be permitted to recover for that class of timber."

*DeLacy & Bishop*, for plaintiff.     *E. D. Graham*, for defendant.

LAMAR, J. 1–5. In judicial investigations it frequently becomes necessary for a jury to determine what is the reasonable value of services or property. In such cases expert and opinion evidence is admissible. There is an apparent, but no real analogy between this class of testimony and proof of reasonable time by like evidence in the present case. The distinction illustrates the

reason underlying the rule. So far as reasonable value is concerned, opinion evidence is the only form of proof which can be made. At last, value is a matter of opinion. So many factors enter into its determination that it would be impossible for any witness to state them all to the jury, or, if he could, it would be impossible for them from such evidence alone to make the calculation. Even as to staple articles the selling price varies from day to day. It is affected by the activity or depression of business, the existence or want of competition and the infinite and complex causes operating under the law of supply and demand. For these reasons, and because no one can tell exactly why anything will sell for a given amount, opinion evidence is admissible. In the nature of things it is the only class of evidence that can be given; and the Civil Code, § 5286, itself expressly recognizes it as proper to be received. The same principle would apply where no record of dates had been kept, or no timepiece had been used in measuring time. It would be impossible for the witness to state exactly how he judged of its lapse or duration. He could therefore give his opinion as to how long he thought it was between two acts. So, too, there might be cases in which it would be proper for opinion evidence to be introduced as to what would be a reasonable time for the performance of a given act. But in such instances its admissibility would grow out of the peculiar facts and result from the inability of the witness to give the data or to detail the circumstances on which he based his conclusion, and also from the impossibility of persons unfamiliar with the special business making the calculation. But in the present case there was no difficulty in the jury making the proper calculation as well as an expert, if they were furnished with the proper data. After considering all the circumstances and the conditions of the parties and determining when the work of boxing the trees should begin, they could then easily determine how long it would take to complete that part of the enterprise. In like manner, it would be for them to determine from all the circumstances what was in contemplation of the parties, or what, under all the facts, would be a reasonable time within which to begin. This having been settled, given the quantity and character of the timber, the usual number of hands, and the capacity of the mill, it would be a mere matter of arithmetic to determine how long would be required to

cut the timber. To permit a witness to determine all these mat-
ters by answering what, in his opinion, was a reasonable time
would have been to allow him to usurp the functions of the jury
and to decide the very point in issue. What was a reasonable
time must be determined by the facts as they existed in 1891.
The condition of the parties and all of the circumstances were for
consideration by the jury under instructions from the court. But
it was not competent for a witness to give his opinion as to what
was a reasonable time within which the trees should have been
boxed and the timber cut. Such testimony involved not only cal-
culations as to what could be done, but also a matter of law, as to
what should be done. *Mayor* v. *Wood,* 114 *Ga.* 370.

6. Construing the contract, then, as it must be, according to its
legal effect on the day it was executed and not according to subse-
quent changes, the court properly instructed the jury, that it in-
cluded only timber which in 1891 was suitable for turpentine
and sawmill purposes. The right to such trees, and to such trees
only, passed at that date, as definitely as if each had been at that
time marked and designated by the parties. If by growth others
thereafter became suitable for turpentine or sawmill purposes,
they did not thereby become subject to a contract which did not
originally include them within its terms. *Martin* v. *Peddy,* 120
*Ga.* 1079 (4); Warren *v.* Short, 119 N. C. 39 (3).

7. When the jury, under the evidence and the charge of the
court, determined what would be a reasonable time for boxing
and cutting the trees, they, in legal effect, could insert that date
in the contract, and thereupon it would result that J. R. Allison
or his assigns would have until the last day within which to exer-
cise the rights granted. He or they could cut all the timber the
first year, or all of it the last year. He or they during this period
could cut a part of the trees on all or a portion of the tract.
During the period found by the jury to be a reasonable time he
or they could return and box or cut the rest. But neither he
nor they could at the beginning of this period cut all of the tim-
ber suitable for sawmill purposes, and then return and cut such
as by growth had become suitable for sawmill timber. Such,
fairly construed, was the effect of the charge assigned as error.
But if there was any doubt thereon, it was removed by a consid-
eration of the succeeding sentence wherein the court instructed

the jury that " they would have had the right to have gone back,, provided it was in the reasonable time that was contemplated by the agreement of parties at the execution of the lease."

8, 9. There was some evidence that the defendant cut dead timber which was lying on the ground; and complaint is made of the charge of the court, that such timber did not pass by the conveyance of 1891. But the verdict in favor of the defendant shows that the jury found as a fact that a reasonable time had expired, and that the plaintiff no longer had any right to even the growing timber. If this was true, the plaintiff, of course, had no right to the dead timber, all having reverted to the grantor. So that if the charge was incorrect, it was harmless. *McRae* v. *Still-well*, 111 *Ga.* 65. *Judgment affirmed. All the Justices concur.*