## COLLETON MERCANTILE & MFG. CO. et al. v. SAVANNAH RIVER LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1922.)

No. 1925.

1. **Removal of causes** ⬡⟹48—Separable controversy.

In a suit in a state court between citizens of the same state to enforce specific performance of a contract for the sale of standing timber, plaintiff joined as defendant a corporation of another state, alleging that it claimed some interest in the timber which constituted a cloud on the title of its codefendant, and asking that such claim be adjudicated. *Held*, that such allegation created a separate controversy, in which the interests of both the other parties were adverse to those of the nonresident defendant, and which entitled it to remove the cause.

2. **Removal of causes** ⬡⟹95, 111—Federal court may protect its acquired jurisdiction by injunction.

Where a cause is removable and has been properly removed, the state court loses jurisdiction, and the federal court may protect its jurisdiction by enjoining further proceeding by the parties in the state court.

3. **Specific performance** ⬡⟹106(1)—Persons interested in subject-matter of suit properly made parties.

A complainant, which had contracted for the purchase of standing timber, in a suit for specific performance of the contract, *held* entitled to join as a defendant a third party, which claimed an interest in the timber, to the end that the rights of all parties therein might be adjudicated in a single suit.

4. **Courts** ⬡⟹352—Jury may be called to try legal issue.

Under equity rule 23 (33 Sup. Ct. xxiv), providing that if, in a suit in equity, a matter ordinarily determinable at law arises, such matters shall be determined in that suit according to the principles applicable, without sending the case or question to the law side of the court, where an issue triable by jury arises, a jury is called to try such issue, and when it has been settled the court adjudicates the equitable issues in the light of the verdict.

Appeals from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit in equity by the Colleton Mercantile & Manufacturing Company against W. B. Gruber and the Savannah River Lumber Com-

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pany. From an order granting an injunction, complainant and defendant Gruber appeal. Affirmed.

M. P. Howell, of Walterboro, S. C. (J. C. Lemacks and Howell & Fishburne, all of Walterboro, S. C., on the brief), for appellants.

G. L. B. Rivers and A. B. Lovett, both of Savannah, Ga. (Hitch, Denmark & Lovett, of Savannah, Ga., Padgett & Moorer, of Walterboro, S. C., and Hagood, Rivers & Young, of Charleston, S. C., on the brief), for appellee.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WOODS, Circuit Judge. On March 21, 1921, Colleton Mercantile & Manufacturing Company, a South Carolina corporation, filed its complaint in the court of common pleas for Colleton county against W. B. Gruber, a citizen of South Carolina, and Savannah River Lumber Company, a Georgia corporation.

The complaint alleged in substance these facts as to W. B. Gruber: Ownership by Gruber of several tracts of timber lands described; the execution on January 7, 1921, by Gruber of an option to the plaintiff to purchase all the pine and cypress timber of certain dimensions on the land for $42,500, payable in installments, the first being $2,500, 60 days from the date of the option; acceptance by plaintiff of the option, and offer to comply with its terms, and demand on Gruber that he make a good marketable conveyance; the inability and refusal of Gruber to make such a conveyance.

The allegations as to the Savannah River Lumber Company are as follows:

"That this plaintiff is informed and believes, and so alleges, that the defendant Savannah River Lumber Company has or claims some interest in or title to the pine timber standing or being upon tract No. 4, * * * and that such claim of ownership and title by the defendant Savannah River Lumber Company constitutes a cloud upon the title and claim of the defendant W. B. Gruber, who claims to be the owner thereof, and renders it unsafe and hazardous for this plaintiff to pay the said purchase money, or any part thereof, until there has been an adjudication by this court of the said claim of title and ownership by the defendant Savannah River Lumber Company. That the defendant Savannah River Lumber Company is made a party defendant, to the end that its claim of ownership in and to the said timber may be set up in this action and examined into and adjudicated by this court."

The relief asked is:

First, examination into and adjudication of the claim of the Savannah River Lumber Company, "and, if it be found that the said defendant owns no title or interest in or to the said timber, that judgment of the court so declare, and the said defendant be forever barred from asserting or claiming any interest or estate therein and the cloud on the title of the defendant W. B. Gruber, thereto removed"; second, "if it be found that the defendant W. B. Gruber is the owner in fee of the said timber and rights contracted and agreed to be conveyed to this plaintiff, as hereinbefore set forth, that this court adjudge and decree that he specifically perform his said agreement and contract as herein set forth"; and, third, "such other and further relief as may be just and equitable and the nature of the case may require."

On the petition of the Savannah Company, based on diversity of citizenship, the state court on March 7, 1921, ordered the cause removed to the federal court, and the Savannah Company filed its an-

swer in the federal court on April 16, 1921, setting up title to the timber on tract No. 4 and recognizing the title of Gruber to the land. On April 28, 1921, the state court reconsidered and undertook to revoke its order of removal. On May 13, 1921, the Savannah Company filed its bill in the federal court, asking, on the pleadings and proceedings above recited, that the Colleton Company and Gruber be enjoined from prosecuting the cause against it in the state court. On June 29, 1921, the District Court made the order of injunction asked, but provided therein:

"That if the Colleton Mercantile & Manufacturing Company shall, within thirty (30) days from the date of this order, move in this court to dismiss the Savannah River Lumber Company as a defendant in the cause mentioned, removed from the state court to this court, so as to leave the same as a cause existing only between the Colleton Mercantile & Manufacturing Company, plaintiff, and W. B. Gruber, defendant, and thereupon move also that the cause in such condition be remanded to the state court, and such order be granted, and that then and in that case the said Colleton Mercantile & Manufacturing Company and W. B. Gruber, or either of them, may move to dissolve the injunction hereby granted."

[1] The appeal is from this order. We think the Savannah Company was entitled to the removal, and that the original order of the state court was right; that on the filing of the transcript in pursuance thereof the state court lost and the federal court acquired jurisdiction; and that the order of the federal court protecting its jurisdiction was properly granted.

Considering the necessary implications of the fourth and fifth paragraphs of the complaint of the Colleton Company, above set out, we cannot doubt the meaning to be that Gruber's inability and refusal to carry out his contract with plaintiff and plaintiff's unwillingness to accept his title were due to the claim of the Savannah Company. Looking from the form to the substance, therefore, the real controversy was between the Colleton Company and Gruber on one side and Savannah Company on the other, as to the validity of the latter's claim to the timber on tract No. 4. The claim of Gruber and the Colleton Company being a common one against the Savannah Company, neither of them could, by joining the other and the Savannah Company as defendants, defeat the right of the latter company to remove the real controversy to the federal court. In such case the court will rearrange the parties according to their interests to preserve the right of removal. Removal Cases, 100 U. S. 457, 25 L. Ed. 593; Harter Twp. v. Kernochan, 103 U. S. 562, 566, 26 L. Ed. 411; Evers v. Watson, 156 U. S. 527, 15 Sup. Ct. 430, 39 L. Ed. 520.

But let it be assumed that the Colleton Company's complaint states a cause of action against Gruber, and shows a controversy with him as well as with the Savannah Company. Nevertheless it is evident that the real interest and assertion of right of the Colleton Company and Gruber is a common one as against the Savannah Company; and it is equally evident that the Savannah Company has no interest whatever in any controversy between Colleton Company and Gruber. In such a condition the plaintiff cannot, by joining a nonresident as defendant with a resident, defeat the nonresident's right to a trial of his separate

and independent controversy in the federal court. The case is capable of separation into parts, so that in one of the parts a controversy is presented between Colleton Company and Gruber, citizens of South Carolina, on one side, and Savannah River Lumber Company, a citizen of Georgia, on the other. This separate part of the case, involving the separate controversy of a defendant, a citizen of Georgia, with citizens of South Carolina, makes the whole case removable. The rule is thus stated in Geer v. Mathieson Alkali Works, 190 U. S. 428, at page 432, 23 Sup. Ct. 807, at page 809 (47 L. Ed. 1122):

"A suit may, consistently with the rules of pleading, embrace several distinct controversies. Barney v. Latham, 103 U. S. 205, 212. It was said in Hyde v. Ruble, 104 U. S. 409: 'To entitle a party to a removal under this clause (second clause of section 2 of the act of 1875; same as second clause in the act of 1887), there must exist in the suit a separate and distinct cause of action in respect to which all the necessary parties on one side are citizens of different states from those on the other.' In other words, as expressed in Fraser v. Jennison, 106 U. S. 191, 194, 'the case must be one capable of separation into parts, so that, in one of the parts, a controversy will be presented with citizens of one or more states on one side, and citizens of other states on the other, which can be fully determined without the presence of any of the other parties to the suit as it has been begun.' And when two or more causes of action are united in one suit, there can be a removal of the whole suit on the petition of one or more of the plaintiffs or defendants * * * interested in the controversy. * * * Hyde v. Ruble, supra. See also Ayres v. Wiswall, 112 U. S. 187."

[2] It follows that, the cause having been properly removed to the federal court by order of the state court, the state court lost jurisdiction, and the federal court was right in enjoining the plaintiff and W. B. Gruber from proceeding with the cause in the state court. Madisonville Traction Co. v. Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462; C. & O. R. Co. v. McCabe, 213 U. S. 207, 217, 219, 29 Sup. Ct. 430, 53 L. Ed. 765.

[3] We think, however, the Colleton Company could properly join Gruber and the Savannah Company as parties, and thus have all claims to the land adjudicated in one action. The general rule is that the holder of the legal title cannot sue to have a cloud removed from the title unless he is in possession. Frost v. Spitley, 121 U. S. 552, 556, 7 Sup. Ct. 1129, 30 L. Ed. 1010. His remedy is an action at law to recover possession. But by the great weight of authority this rule does not apply to the holder of the equitable title, because he had no remedy at law. Pomeroy's Eq. (3d Ed.) § 1399, note 1. This is the rule in South Carolina. Pollitzer v. Beinkempen, 76 S. C. 517, 520, 57 S. E. 475. On this point the federal court will be controlled by the state practice. Frost v. Spitley, 121 U. S. 552, 556, 7 Sup. Ct. 1129, 30 L. Ed. 1010. It would be a hardship to require the Colleton Company either to pay Gruber and take his title, with the claim of the Savannah Company outstanding, or lose its bargain. It has no power to require Gruber to sue the Savannah Company for possession. Hence it seems to us it could get no adequate relief, except by bringing both adverse claimants in and having their rights adjudicated.

It is true the Supreme Court held in Willard v. Tayloe, 8 Wall. 557, 571, 19 L. Ed. 501, in an action for specific performance, that one who

had acquired a partial interest from plaintiff after the suit was begun was not a necessary party, and that the general rule was that only parties to the contract were proper parties to the suit. But the court intimated that special circumstances might authorize a departure from the rule. As we have tried to show, here the special circumstances are such that the complainant can get no adequate relief without having the Savannah Company before the court. The rule in nearly all the other courts of this country is that all parties interested in the subject-matter should be brought in. Midland Timber Co. v. Prettyman, 95 S. C. 13, 75 S. E. 1012; 1 Pomeroy's Eq. (3d Ed.) 14; 36 Cyc. 768, and cases cited. In Heckman v. United States, 224 U. S. 413, 448, 32 Sup. Ct. 424, 56 L. Ed. 820, a number of holders of independent titles were made parties to one suit to set aside their conveyances; all the titles depending on a single statute. In Gaines v. Chew, 2 How. 619, 642 (11 L. Ed. 402) the court says:

"It is well remarked by Lord Cottenham, in Campbell v. Mackay, 7 Sim. 564, and in 1 Myl. & C. 603, 'to lay down any rule, applicable universally, or to say, what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible.' Every case must be governed by its own circumstances; and as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. Whilst parties should not be subjected to expense and inconvenience in litigating matters in which they have no interest, multiplicity of suits should be avoided, by uniting in one bill all who have an interest in the principal matter in controversy, though the interests may have arisen under distinct contracts. In a course of reasoning in the above-cited case, Lord Cottenham observes: 'If, for instance, a father executed three deeds, all vesting property in the same trustees, and upon similar trusts, for the benefit of his children, although the instruments and the parties beneficially interested under all of them were the same, it would be necessary to have as many suits as there were instruments. That is a proposition,' he says, 'to which I do not assent. It would, indeed, be extremely mischievous, if such a rule were established in point of law. No possible advantage could be gained by it; and it would lead to a multiplication of suits, in cases where it could answer no purpose to have the subject-matter of contest split up into a variety of separate bills.' The same doctrine is found in Story's Equity Pleading, § 534; Attorney General v. Cradock, 3 Myl. & C. 85, 7 Sim. 241, 254. In the above case against Cradock, the chancellor says: 'The object of the rule against multifariousness is to protect a defendant from unnecessary expense; but it would be a great perversion of that rule, if it were to impose upon the plaintiffs, and all the other defendants, two suits instead of one.'"

See, also, Caldwell v. Taggart, 4 Pet. 190, 7 L. Ed. 828.

[4] The Savannah Company has, of course, a right of trial by jury on the issue of its title to the property. Under the old practice, if in a suit in equity the defendant set up an adverse legal title to the subject of the action, as in a suit for partition where one of the defendants set up title by adverse possession, the practice was to suspend the equity suit until the plaintiff could bring his action at law. Clark v. Roller, 199 U. S. 541, 546, 26 Sup. Ct. 141, 50 L. Ed. 300; Gilbert v. Hopkins (C. C.) 171 Fed. 704. But that would give the plaintiff here no relief, since it could not recover in a law action, nor require Gruber to test his title in a law action.

The real dividing line between law and equity under the Constitution is the line between controversies triable by jury under the common

law of England and those not so triable as a matter of right. Root v. Railway Co., 105 U. S. 189, 206, 26 L. Ed. 975. The District Court is a court of law and equity. The judge performs his functions as a judge of both courts concurrently. The only mechanical difference is separate dockets and records. Juries are impaneled and used in both courts, heretofore in the court of equity to enlighten the conscience of the judge as to an issue of fact. Equity rule 23 (198 Fed. xxiv, 115 C. C. A. xxiv) now provides:

"If in a suit in equity a matter ordinarily determinable at law arises, such matter shall be determined in that suit according to the principles applicable, without sending the case or question to the law side of the court."

We think this rule means that, where in an equity case a matter triable by jury arises, the court shall not refuse to try it, and shall not go through the form of sending it to the law side of the court, but shall determine it according to all the principles applicable—one of which is the right of trial by jury. Under rule 22, if the case is essentially a law case improperly brought in equity, it must be transferred to the law side. Under rule 23, if the case, looked at as a whole, is an equity case, but a question arises in it triable by jury, a jury trial is held to settle the legal issue without transfer. When the legal issue has been settled by the verdict of the jury, the court adjudicates the equitable issues in the light of the verdict.

Affirmed.