## COLLETON MERCANTILE & MFG. CO. v. GRUBER et al.

(District Court, E. D. South Carolina. May 6, 1925.)

No. 229.

1. **Customs and usages** &#x269C;19(3)—Evidence held to show no definite custom that timber included only trees 18 inches in diameter and upwards.

On issue of construction of deed conveying all pine timber now standing or which may be standing or otherwise, giving grantee 15 years within which to cut and remove it, with right to renew for 10 years by paying interest to grantor, evidence *held* to show no definite custom that only trees 18 inches in diameter 18 inches above ground should be deemed timber, so that parties would be presumed to have contracted with reference to it.

2. **Contracts** &#x269C;147(1)—Intention of parties govern, if not contrary to public policy.

Intention of parties to contract must govern, in absence of ground of public policy to contrary.

3. **Logs and logging** &#x269C;3(7)—Intention gathered from instrument, giving effect to all words, if possible.

Intention of parties to deed to timber is to be gathered from terms of the instrument itself, and effect should be given to all words in deed, if possible.

**4. Logs and logging ⊚⟹3(10)—In timber deed, with term for removal, only existing timber passes, unless prospective words indicate contrary intention.**

In deed conveying timber, even where term of years is provided in which it may be removed, only timber in existence at date of deed passes, unless prospective words indicate contrary intention.

**5. Logs and logging ⊚⟹3(10)—Deed held to convey future growth of timber also; "which may be standing during term."**

The quoted words in a deed conveying all pine timber now standing, "or which may be standing or otherwise during term hereinafter named," were prospective words, and conveyed future growth also.

**6. Logs and logging ⊚⟹3(10)—"Timber," as conveyed by deed, construed.**

The word "timber," as used in a deed conveying all pine timber now standing, or which may be standing or otherwise during term of 15 years granted for its removal, with additional term of 10 years on payment of interest held, under facts and evidence, to mean all such pine timber as was useful or could be used for manufacturing into lumber, whether dimension or board, stringers, laths, or for piling or cross-ties, but included no saplings or undergrowth not suitable therefor; timber 8 inches in diameter 18 inches above ground being within deed.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Pine Timber.]

**7. Costs ⊚⟹241—Costs equally divided, where neither party got full relief.**

Where neither party got full relief, held, in view of record, that costs should be equally divided.

In Equity. Suit by the Colleton Mercantile & Manufacturing Company against W. B. Gruber and another. Decree for defendants.

J. C. Lemacks, of Walterboro, S. C., for plaintiff.

Padgett & Moorer, of Walterboro, S. C., Hagood, Rivers & Young, of Charleston, S. C., and Hitch, Denmark & Lovett, of Savannah, Ga., for defendant Savannah River Lumber Co.

M. P. Howell, of Walterboro, S. C., for defendant Gruber.

ERNEST F. COCHRAN, District Judge. This case was originally commenced in the state court, and removed to this court by the Savannah River Lumber Company. An injunction was issued, restraining the parties from proceeding in the state court, and upon appeal the ⋅Circuit Court of Appeals held that there was a separable controversy as to the Savannah River Lumber Company, which could be removed, and that the inter-

ests of the defendant W. B. Gruber and of the plaintiff the Colleton Mercantile & Manufacturing Company were identical as against the defendant the Savannah River ⋅Lumber Company, and that the parties should be arranged as to the separable controversy in accordance with their real interests. Colleton, etc., v. Savannah, etc., 280 F. 358.

After the mandate on that appeal had been received, the parties entered into a stipulation that there should first be tried the issue of the conflicting claims of title to the timber on the "Rotherwood" plantation, between W. B. Gruber and the Colleton Mercantile & Manufacturing Company, on the one hand, and the Savannah River Lumber Company, on the other hand, and that the Colleton Mercantile & Manufacturing Company, the purchaser from Mr. Gruber, should be represented by W. B. Gruber in the determination of that issue; said stipulation reserving the question as to what timber was included in the deed in question, as presented by the second paragraph of the second defense of Mr. Gruber's answer. This court decided, upon that first issue as to the conflicting claim of title, that the title to the timber was in the Savannah River Lumber Company, and an appeal was taken to the Circuit Court of Appeals, which affirmed this judgment (Gruber v. Savannah River Lumber Co., 2 F. [2d] 418), and the mandate from that court, in accordance with the stipulation of the parties, provided that the further issue raised by the second paragraph of the second defense of the answer of W. B. Gruber should be heard and determined by this court.

This latter issue now comes on for hearing. That part of the answer substantially sets forth that, according to the terms of the deed of conveyance under which the Savannah River Lumber Company claims the timber in question, the same operated as a conveyance of the pine trees standing upon such lands at the date thereof suitable for sawmill purposes according to the custom and usage of the country, and that at that time it was the custom and usage of the country to cut and manufacture into timber pine trees of and above 18 inches in diameter at the stump, 18 inches above the ground, and nothing smaller, and that all of this was well known to the purchaser before and at the time of the execution and delivery of the said conveyance.

Mr. Gruber's contention is that the word "timber," as used in the deed in question,

does not include undergrowth and saplings, but includes only such trees as were suitable to be sawed for manufacturing purposes, and that according to the custom of the country at that time trees less than 18 inches in diameter were not considered as suitable for such purposes, and that the parties contracted with reference to such custom, and that the deed in question does not include any future growth, and that the Savannah River Lumber Company is therefore entitled to cut only those trees now upon the land which were in existence at the date of the deed in 1902, and which then measured 18 inches in diameter 18 inches from the ground. The Savannah River Lumber Company contends, on the contrary, that the word "timber" means all growth upon the land, including saplings and undergrowth; that there was no such custom restricting the meaning of the term at the date of the deed; and that the deed by its terms includes not only all trees, saplings, and undergrowth in existence at the time of the deed but all future growth—that is, all that came into existence after the execution of the deed and before the expiration of the term of removal provided for in the deed,

There are therefore three questions for decision by this court:

(1) Was there a custom, at the time of the execution of the deed in question, that only such trees should be deemed timber as measured 18 inches and upwards in diameter at the height stated?

(2) Did the deed in question convey only timber in existence at the date of the deed, or future growth as well?

(3) Does the word "timber," as used in the deed, mean only such as was useful for being manufactured, or did it include saplings and undergrowth?

From the testimony and evidence I find the facts to be substantially as follows:

Prior to 1902 the smaller lumber mill operators in Colleton county did not usually cut timber which measured less than 18 inches. Occasionally smaller operators did cut timber for boards for local purposes considerably smaller than 18 inches. The reason given for not cutting timber less than 18 inches was, not that it could not be cut and manufactured into articles suitable for lumber or other commercial purposes, but that it was not usually profitable. It appears, also, that at that time there was very little demand for lumber cut from the smaller sizes of timber. However, the evidence shows that while a number of large operators usually cut only the larger sizes, 18 inches and upwards, nevertheless some of them did at times prior to 1902 cut timber much lower than that. A considerable amount of timber was cut as low as 12 inches in diameter for "piling" and "crossties," and there was evidence that some timber below 18 inches was cut for "stringers."

A large number of deeds have been offered in evidence of conveyances by various parties of timber in Colleton county, both prior to 1902 and afterwards. In a number of these deeds prior to 1902, the deeds provided for the sale of "all timber," while in a large number of them the restriction was to timber measuring as much as 12 inches and 10 inches in diameter, and some even as low as 8 inches. These deeds are only useful in this connection as showing whether there was any definite custom or not that only trees 18 inches in diameter and above would be considered as timber. The evidence shows that prior to 1902, where operators refrained from cutting the smaller trees, they did so simply from the fact that it was not profitable at that time, and that, when they cut smaller trees, no objection was ever raised by any one on the ground of any custom preventing them from so cutting, whether they operated under a deed calling for all timber or dimensions less than 18 inches. The weight of the evidence is to the effect that the mill operators, even before 1902, cut any size timber they desired, when their deeds called for all timber, and when restricted to a certain size they cut anything they desired within the limitations of their deeds. Some time prior to 1902, it began to be profitable to cut the smaller timber with a band saw, but the band saw does not appear to have been used in Colleton county before 1902. After that time, however, band saws began to be used in that county, and from that time onward operators cut timber down as low as 10 and 8 inches in diameter. It appears from the testimony that the use of the band saw made the cutting of such timber more profitable than could be done with the old circular saw.

On the ——— day of June, 1902, M. E. Bellinger and others executed to the Charleston Lumber Company the deed, the terms of which are in question. By that deed they conveyed "all pine timber now standing, or which may be standing or otherwise, during the term hereinafter named," upon the "Rotherwood" tract of land. The deed then gives the grantee the right to construct

roads, tramways, railroads, etc., upon the lands and any other lands of the parties, for the purpose of cutting and removing said timber, or any other timber owned by the Charleston Lumber Company, and further provides that "the said Charleston Lumber Company shall have the right and privilege of locating the said roads and tenements and the use of such trees, undergrowth, and dirt as may be necessary to construct and maintain the same." The deed reserves to the Bellingers "the right to use wood and timber from said lands for plantation purposes, such as firewood, rails and timber for repairs." The deed then provides as follows: "That the said Charleston Lumber Company shall have the term of 15 years within which to cut and remove said timber from the date hereof, and shall have an additional term of 10 years within which to cut and remove said timber on paying to us, the said M. E. Bellinger, C. Bellinger, L. Bellinger and L. Bellinger, trustee, at the end of every year of renewal, interest at 6 per cent. on the purchase money aforesaid." These are all of the provisions of the deed that are pertinent to the present inquiry. The deed was properly recorded on June 25, 1902. The Savannah River Lumber Company is the successor in interest of the Charleston Lumber Company, and claims under this deed. Mr. Gruber is now the owner of the land by conveyances running back to the Bellingers, so that both parties claim title through a common source.

Mr. Gruber offers in evidence a certain option agreement, dated 25th of February, 1902, between L. Bellinger, trustee, and the Charleston Lumber Company. This option agreement is signed only by L. Bellinger, trustee. It was shown that the signature of L. Bellinger was his signature. The option was witnessed by J. H. Sanders and L. Bellinger, Jr., and it was shown that the signature of J. H. Sanders was his signature, but there was no proof as to the signature of L. Bellinger, Jr. It was also shown that L. Bellinger, trustee, and J. H. Sanders were dead, and that L. Bellinger, Jr., was said to be in the state of Florida, and had not been heard from for two or three years. This paper was produced by Mr. Gruber, and was shown to have come into his possession when he purchased the land, along with his muniments of title. There was no proof that the option agreement had ever been delivered.

On the back of the option agreement is an extension of time signed by L. Bellinger,

trustee, and witnessed by M. P. Howell and J. H. Sanders, and it was proved that these signatures to the extension were genuine. The option agreement itself is as follows:

"This agreement, made this 25th day of February, 1902, between L. Bellinger, trustee, of the county of Colleton and state of South Carolina, of the first part, and Charleston Lumber Company of the second part, witnesseth: That in consideration of one dollar, the receipt of which is hereby acknowledged, and of the covenants of the party of the second part hereinafter contained, the said party of the first part hereby covenants and agrees to sell with general warranty unto the said Charleston Lumber Company, its successors and assigns, all the pine timber now standing, or which may be standing or otherwise, during the term hereinafter named, of and above the size of ———— inches in diameter at the stump when cut, upon the following described lands, situate in the county of Colleton and state of South Carolina, containing 1,200 acres, more or less, known as Rotherwood, and bounded on the north by the old Carn place, south by Speights and Mrs. Eugine McTeer, east by old Murray tract, west by Blue House public road—being described of record in Book ————, page ————, County Registry, as follows: ————.

"But it is expressly understood, covenanted, and mutually agreed that compliance with this contract is to be at the option of the said party of the second part until the 25th day of May, 1902, and this contract shall be absolutely null and void from and after said date, unless the said party of the second part shall pay or cause to be paid to the said party of the first part on or before the said 25th day of May, 1902, the sum of $5 on account of the purchase price of said timber. And in the event this sale is consummated, the said timber is to be paid for as follows: The sum of $500 cash upon due execution of deed with covenants herein provided for, and the sum of ———— without interest. And, in the event this sale is consummated, the said party of the first part agrees to execute deed for said timber to the said party of the second part with covenants as follows: (1) That the party of the first part own said property in fee, and that he will convey the same free from all liens and incumbrances. (2) That he will warrant and defend the title to the above-described property unto the party of the second part, its successors and assigns,

against the claims of all persons whatsoever. (3) That the party of the second part may construct, maintain, and use such roads, tramways, and railroads, houses, and tenements, and remove the same at will, in and upon said lands, and any other lands owned by the party of the first part, as it may deem necessary for cutting and removing said timber, or any other timber owned, controlled, or subsequently purchased by the party of the second part or assigns, and shall have the right and privilege of locating said roads and tenements, and the use of such trees, undergrowth, and dirt as may be necessary to construct and maintain the same. (4) That the said party of the second part shall have the term of 25 years within which to cut and remove said timber." (The following words in the printed form are stricken out by drawing a pen through them: "From the time they commence to manufacture same into wood or lumber, and shall have an additional term of 10 years within which to cut and remove said timber on paying to the party of the first part at end of every year of renewal interest at 6 per cent. on the purchase money aforesaid.")

"In witness whereof, the said party of the first part hereto set his hand and seal the day and year above written.

    "L. Bellinger, Trustee [Seal.]
"L. Bellinger, Jr.
"J. H. Sanders."

On the back of this printed form of option agreement is the following extension in handwriting:

"I hereby extend the within option and agreement, for ten days from the date hereof.

"April 26, 1902.
    "L. Bellinger, Trustee.
"Witness:
    "M. P. Howell.
    "J. H. Sanders."

[1] Considering now the first question as to custom: The weight of the evidence is against the contention of Mr. Gruber. There is no proof of any such definite custom that the law would presume that the parties contracted with reference to it. The most that can be said is that most operators prior to 1902 did not find it profitable to cut trees less than 18 inches in diameter, but sometimes they did cut such trees, and certainly a great many trees less than that were cut and used for piling, cross-ties, stringers, and laths. The clear weight of the testimony is that no such custom prevailed, and I so find as a matter of fact.

Upon the other two propositions, both sides have cited a number of decisions, but (aside from a few citations giving definitions of the word "timber") none of the cases cited is precisely in point, and only a brief reference to them is necessary.

The Savannah River Lumber Company cites Rush v. Hilton, 83 S. C. 444, 65 S. E. 525; Hill v. Burton, 90 S. C. 176, 72 S. E. 1085; Williams v. Bruton, 121 S. C. 30, 113 S. E. 319; Furman v. Tuxbury Lumber Co., 112 S. C. 71, 99 S. E. 111. In these cases, however, the terms of the deed were different from the terms of the deed now under consideration, and there was no point raised or decided as to the kind of timber conveyed or whether it included future growth or not. The nearest cases in point which the Savannah River Lumber Company cites are Nelson v. Americus Manufacturing Co., 186 F. 489, 108 C. C. A. 467, and Adams v. Hazen, 123 Va. 304, 96 S. E. 741.

In Nelson v. Americus, etc., the Circuit Court of Appeals for the Fifth Circuit held that by a certain lease in question the lessees acquired the right to cut all the timber on the lands suitable for sawmill purposes during the 20 years covered by the lease, and that they were entitled to cut, not only the timber suitable at the date of the lease, but all that became suitable during the life of the lease. The report of this case does not give the terms of the lease, but in a later case (Pearl River Co. v. Wyatt Lumber Co.) that court referred to the records of the court and stated what the terms of the lease were, and those terms are so entirely different from the terms of the deed in the case at bar that the case is of no assistance in the solution of the present question. Pearl River County v. Wyatt Lumber Co. (C. C. A.) 270 F. 26, 30.

In the case last cited, the court held that a statute of Mississippi, authorizing a board of supervisors to sell "merchantable timber" on certain land, authorized the board to sell only the timber merchantable at the time of the sale, and not that which might thereafter become merchantable within the time granted to remove the timber, and that a conveyance of merchantable timber, with the right to enter within a fixed time to cut and remove, in the absence of any other language, conveyed only the timber merchantable at the time of the conveyance. Here, also, the facts are different and the case is

not in point. Pearl River Co. v. Wyatt Lumber Co., supra.

In Adams v. Hazen, supra, the Supreme Court of Virginia held that in a contract for the sale of "all merchantable timber," not otherwise limiting the purpose for which the timber was to be used, the description covered all timber of whatever size that, at the time of or during the contract, had a commercial value in that locality for the purpose of manufacturing or other purpose. But in that case the decision of the court was based on the qualifying adjective "merchantable," and in the case at bar that word is not used in the deed.

Mr. Gruber cites on these two points Crawford v. Lumber Co., 79 S. C. 166, 60 S. E. 445; Wilson Lumber Co. v. Alderman, 80 S. C. 106, 61 S. E. 217, 128 Am. St. Rep. 865; McRae v. Stillwell, 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 518; Allison v. Wall, 121 Ga. 822, 49 S. E. 831; Kelly v. Enterprise Lumber Co., 157 N. C. 175, 72 S. E. 957.

In Crawford v. Lumber Co. the language of the instrument was "all of the pine trees," specifying size, etc., "now being on the various tracts of land described as follows: [Describing same.]" There were no additional words, qualifying these words, from which it could be inferred that future growth was intended, and the court therefore held that only the timber of the specified size at the time the deed was made between the parties was conveyed. The distinction between that case and this is that in that case there was a specified size and no prospective words.

In Wilson Lumber Co. v. Alderman there was a fee-simple warranty deed, without conditions or limitations, conveying "all the pine trees and timber suitable for milling purposes," and a right of entry for cutting and removal, and it was held that there was conveyed all trees and timber suitable for milling purposes at the date of the deed. In that case the kind of timber was qualified by the words "suitable for milling purposes," and there were no prospective words.

In McRae v. Stillwell the conveyance was of "all the pine timber suitable for sawmill purposes," and it was held that only the pine timber suitable for sawmill purposes at the date of the deed was passed. But in that case there were no prospective words, and the word "timber" was qualified by the words "suitable for sawmill purposes."

So, also, in Allison v. Wall, the conveyance was of "all pine trees growing and being" upon certain tracts of land "suitable for sawmill and turpentine purposes," and it was held that only the timber which was suitable for those purposes at the date of the deed passed by the deed. But here, also, were the qualifying words, "suitable for sawmill purposes," and there were no words of a prospective nature.

In Kelly v. Enterprise Lumber Co. there was a reservation by the grantor of "all the timber of every description on said lands," and it was held that there being no prospective words, the only timber reserved were those trees which were large enough for timber trees at the date of the deed.

[2-4] Inasmuch as the terms of the present deed are so different from the terms in all of the deeds in the cases cited by Mr. Gruber, it is clear that these cases are not in point. In considering the second question presented in this case, viz. whether the deed in question conveyed only the timber in existence at the date of the deed or future growth as well, inasmuch as there are apparently no authoritative decisions directly in point the question will be considered in the light of general principles. It is elementary that the intention of the parties to the contract must govern, in the absence of any ground of public policy to the contrary. The intention is to be gathered from the terms of the instrument itself and effect should be given to all the words in the deed, if possible. It is clear, from the authorities which have been cited by Mr. Gruber and referred to above, that in a deed of conveyance of timber, even where a term of years is provided within which it may be removed, only the timber in existence at the date of the deed passes by the deed, unless there are prospective words indicating a contrary intention.

[5] So that the real question is whether or not in this case there are such prospective words. Upon due consideration, I do not see any escape from the conclusion that there are such prospective words, and that the parties intended to convey future growth as well as timber in existence at the date of the deed. The deed first provides for the conveyance of "all the pine timber now standing." If it had stopped here, there would be no question but that only timber then in existence was intended to be conveyed, especially in view of the use of the word "now." But the deed does not stop there. It says: "All the pine timber now standing or which may be standing or otherwise, *during the term hereinafter named.*"

The words "during the term hereinafter named" qualify the words "which may be standing or otherwise," and are clearly prospective.

This is the only construction possible which will give any effect to the words "during the term hereinafter named." They must mean something. Unless they mean that any timber found standing or otherwise at any time during that term are to be included in the deed, then they mean nothing. The deed later sets forth what the "term hereinafter mentioned" is. It provides that the grantee shall have the term of 15 years within which to cut and remove said timber, and an additional term of 10 years upon the payment of certain renewal interest. The Savannah River Lumber Company has availed itself of its option to secure the additional term of 10 years, and "the term hereinafter mentioned" is the term of 25 years from the date of the deed. Any growth which comes into existence and becomes timber within that term of 25 years is as clearly within the operation of the deed as the timber in actual existence at the time of its execution.

Mr. Gruber argues, however, that the clause "during the term hereinafter mentioned" is intended to limit the life of the tenure to the period fixed for the cutting and removal, and cites in support of the proposition the case of Putnam v. Tuttle, 10 Gray (Mass.) 48. The terms of the deed in Putnam v. Tuttle were entirely different from the terms of the deed in the present case and that case does not sustain Mr. Gruber's contention. The clause "during the term hereinafter mentioned" was not placed there for the purpose of limiting or qualifying the tenure, for the reason that, if those terms be entirely stricken out from the deed, the life of the tenure is not affected. In other words, if we strike out those words from the deed, the grantee's tenure would be exactly the same, and he would be compelled to remove the timber in exactly the same time whether those words be inserted or omitted.

Mr. Gruber argues, however, that the following words in the option agreement: "Of and above the size of ——— inches in diameter at the stump when cut"—show that the parties did not intend future growth, because these words were eliminated and not placed in the deed. There are a number of reasons why this argument cannot prevail:

(1) There is no proof that the option agreement was ever delivered to or accepted by the Charleston Lumber Company. It was not found among the muniments of title of that company. It is not signed by all of the parties who made the deed, and there is no proof that the deed was executed to carry out this particular option agreement.

(2) The option agreement was never recorded. The deed was recorded at the proper time. The Savannah River Lumber Company are innocent purchasers for value without notice of this option agreement. In no event, therefore, could they be bound by its terms.

(3) The previous negotiations of the parties, including the option agreement, are to be deemed merged in the deed. The option agreement differs in terms from the deed, not only in the point mentioned by Mr. Gruber, but in other material respects. For example, an inspection of the original option agreement shows that it was originally drawn for a term of 15 years, with a provision for an additional term of 10 years upon a payment of renewal interest, etc., but that it was changed by changing the figures 15 into 25, and striking out the provision for the additional term of 10 years upon the payment of renewal interest. The deed, however, does not provide for a term of 25 years absolutely, but makes provision for 15 years in the first instance, and 10 years' additional time, as originally provided in the option agreement before it was changed. It is to be presumed that these changes were deliberately made by the parties, and that the deed expresses their true final contract.

(4) Assuming, however, but without conceding, that the option agreement may properly be admitted in evidence, and that its terms may be resorted to for the purpose of ascertaining the intention of the parties to the deed, nevertheless, I do not think there is anything in it to show that future growth was not intended by the parties. An inspection of the original option agreement shows that it is a blank printed form, providing for the sale of timber. The word "timber" is stricken out, and "pine timber" written instead, so that the option agreement reads as follows: "All the pine timber now standing, or which may be standing or otherwise, during the term hereinafter named, of and above the size of ——— inches in diameter at the stump when cut." When the parties left blank that portion of the option agreement relating to the number of inches, the effect was the same as if all the words "of and above the size of ———

inches in diameter at the stump when cut" were stricken from the option agreement, because that clause was only inserted for the purpose of stating the size of the timber when the agreement should provide for a limitation in size, and had no useful purpose if all timber without regard to size was intended. So that the deed, in leaving out those terms, followed really the intention of the parties, and is in accord with the option agreement in that respect.

[6] The third question involves the meaning of the word "timber" as used in the deed. Does it mean all growth, including saplings and undergrowth, down to the smallest switches, as claimed by the Savannah River Lumber Company? Or does it mean only such growth as is useful for constructive purposes? I cannot sustain the view of the Savannah River Lumber Company that all growth upon the land is included in the word "timber" The word "timber" is a word of variable meaning and use. It has an enlarged or restricted sense, according to the connection in which it is employed. It is sometimes used in a very broad sense, to cover all growth, as contended for by the Savannah River Lumber Company; but such is not its ordinary meaning, and the definitions of the term as found in the dictionaries and also in the decisions of the courts show that its general meaning is much more restricted than that contended for by the Savannah River Lumber Company. In the Century Dictionary, it is defined: "Growing trees yielding wood suitable for constructive uses." The other dictionaries give practically the same definition.

In Hicks v. Phelps the Supreme Court of Kentucky held that, in a provision in a deed of real estate reserving certain described "timber," the word "timber," as so used, meant all trees of a size suitable to make lumber, and excluded saplings and undergrowth. Hicks v. Phelps, 146 Ky. 305, 142 S. W. 394, 47 L. R. A. (N. S.) 878. In Balderson v. Seeley the Supreme Court of Michigan held that a sale of timber passed only such as was suitable for constructive purposes, and did not pass such as was suitable only for firewood; but in that case some stress was laid by the court upon the fact that the parties had so construed the contract themselves. Balderson v. Seeley, 160 Mich. 186, 125 N. W. 37, 136 Am. St. Rep. 428, 19 Ann. Cas. 1050. In Alcutt v. Lakin, the Supreme Court of New Hampshire said that the term "tim-

ber," when applied to standing trees generally means such as are suitable for use in the erection of buildings or in the manufacture of tools, utensils, furniture, carriages, fences, ships, and the like. Alcutt v. Lakin, 33 N. H. 507, 509, 66 Am. Dec. 739.

But it is not necessary to pursue the subject further as to the definition of the word "timber" by the courts, for they are all, so far as the court has been able to find, practically in accord that, generally speaking, in contracts of this nature, it does not include anything that cannot be used for constructive purposes. See note 2, 25 Cyc. 1545, where a number of cases are collated. In this case, in view of the various provisions of the contract, the circumstances surrounding it, and the evidence before me, I have come to the conclusion that in this deed in question, by the use of the words "pine timber," the parties meant all such pine timber as is useful or could be used for the purpose of manufacturing into lumber, whether dimension or board lumber, stringers, laths, or for piling or cross-ties, or other constructive purposes, and did not include saplings or undergrowth not suitable for such purposes.

Having reached the conclusion as to the proper definition of the term as used by the parties, I am somewhat doubtful whether the court is under any duty to further define the term, by specifying any particular size of timber which would conform to this definition. But the parties have introduced considerable evidence, and have argued and apparently insisted that the court should make a finding upon this point definitely, in order to avoid any future controversy between them. I have therefore duly considered the evidence in this respect, and the evidence satisfies me that certainly timber which measures 8 inches in diameter at a height of 18 inches from the ground, and upwards of that size, is suitable for use for the constructive purposes mentioned, and is therefore within the terms of the deed. It is possible that some timber below such size may be so used, but the evidence is not entirely satisfactory, while it is satisfactory as to that size and upwards.

[7] As to the costs: In view of the fact that this court has not sustained either of the parties in full in their contention, and upon a consideration of the whole record of the cause, I think it would be fair and equitable that all the costs (in this court) of the whole case (including the compensation of the special master) should be equally divid-

ed between Mr. Gruber and the Colleton Mercantile & Manufacturing Company on the one side, and the Savannah River Lumber Company on the other. The previous decree of this court, which has been affirmed by the Circuit Court of Appeals, adjudged the title to the timber on the said Rotherwood plantation to be in the Savannah River Lumber Company, and it only remains for this decree to define that timber, and thereby decide the issues raised in the second paragraph of the second defense of the answer of Mr. Gruber.

It is therefore ordered, adjudged, and decreed: (1) That the Savannah River Lumber Company is the owner and has the title to all the pine timber on the Rotherwood plantation or tract of land, described in the complaint, measuring 8 inches in diameter and upwards at a height of 18 inches from the ground, and including also all such pine timber as shall attain such measurement during the period of time provided by the above-mentioned deed for the removal of the same, and that W. B. Gruber is the owner and entitled to all of the remaining timber upon said tract, and the title of each of said parties in and to the same is hereby quieted forever. (2) That the costs of the whole cause in this court (including the compensation of the special master for his services, which will be fixed by the court upon application of either party) be taxed by the clerk, and one-half thereof paid by W. B. Gruber and the Colleton Mercantile & Manufacturing Company, and the remaining one-half be paid by the Savannah River Lumber Company, and that either party have the right to enter up judgment and issue execution against the other for any excess paid by such party over and above its one-half of said costs as apportioned by this decree.