A92A0930, A92A0931, A92A0933. YOUNG v. THE STATE
(three cases).
A92A0932, A92A0934. JACKSON v. THE STATE (two cases).
(422 SE2d 244)

BEASLEY, Judge.

Young was charged in one indictment with seven counts of sale of personal property to a political subdivision by a local officer or employee, OCGA § 16-10-6 (b). Five counts were dismissed because of the statute of limitation, and he was convicted of two counts. The appeal is Case No. A92A0930.

Both Young and Jackson were charged in a second indictment with 16 counts of violating the same statute, jointly tried, and convicted of all counts. Young's appeal is Case No. A92A0931, and Jackson's is Case No. A92A0932.

In a third indictment both Young and Jackson were charged with one count of conspiracy to defraud a political subdivision, OCGA §

16-10-21, of which they were convicted. Young's appeal is Case No. A92A0933; Jackson's is Case No. A92A0934.

Motions for new trial were denied as to each judgment.

*Case No. A92A0930*

In the two counts tried on the first indictment, Young was charged as an employee of Carroll County, with unlawfully selling creek sand and gravel for himself and in behalf of Creek Sands, Inc., to Carroll County on May 1, 1987, for $31,770, and on June 2, 1987, for $47,296.

During the relevant time period, Young was employed by Carroll County as a grade foreman and William Cooke (who previously pled guilty to similar charges) was employed by the county roads department and later as deputy warden of the prison. In early fall of 1986, Cooke and Young learned that the county was seeking to purchase a less costly base material than that used previously in road construction. They discussed the formation of a business for the purpose of acquiring creek sand and selling it to the county as an alternative road base material. During 1986, they sought to buy creek sand from John Palk and told him they were interested in getting into the sand and gravel business in their individual capacities.

In early November, Cooke and Young approached Walt Hollingsworth (a non-county employee) with an offer to form a business for the purpose of "min[ing] creek sand and gravel from the creeks around the community [and] sell[ing it] to the county." It was "public knowledge" that the three were in business together. Hollingsworth was to be a 40 percent partner and would manage the day-to-day operations. Cooke and Young each retained 30 percent. "Creek Sands, Inc." was formed in February 1987. Hollingsworth was the sole shareholder, but Young invested $4,500 and assumed the task of locating sources of creek sand or gravel. Hollingsworth testified that he submitted sealed bids to the county to acquire its work, but the county road superintendent testified that the county "had no formal bid procedures" and instead accepted price "quotes."

In about February 1987, when Cooke and Young learned of an ongoing investigation into their activities by the Georgia Bureau of Investigation, they decided to treat their investment in the corporation as a loan to Hollingsworth to allow him to carry on the business. Both continued to be employed by the county, and in April 1987, Young delivered a $3,000 cash payment to Cooke from the corporation.

Back in December 1986, Hollingsworth informed Young and Cooke that he had received legal advice that their business endeavor was unlawful. When asked whether the three thereafter remained in

business, Hollingsworth responded, "I can't say that we were, and I can't say we weren't. I relayed the messages on. It never really materialized any further. Nobody was paid out, if that's what you mean. Everybody was still intact." He testified that Creek Sands continued to do business with the county.

On May 1, 1987, Hollingsworth submitted a bill for $31,770 to the county, for which the corporation received payment on May 15. On June 2, 1987, the corporation billed the county for $47,296 and received payment on June 6.

Although Young denied having any interest in the corporation after February 1987, there was evidence that deliveries of equipment for Creek Sands, Inc. were made to Young's residence and that he paid Creek Sands' bills through June 1987. Hollingsworth terminated his interest in Creek Sands that month. A private hauling contractor who did work for Creek Sands testified that Young was "running the business" and that Young told him he intended to continue to do so after Hollingsworth left in June.

1. Young contends that the evidence was insufficient to support the verdict.

OCGA § 16-10-6 is violated when: "(a) Any employee, appointive officer, or elective officer of a political subdivision, hereafter referred to as 'employing political subdivision,' or agency thereof who for himself or in behalf of any business entity sells any real or personal property to: (1) The employing political subdivision; . . ." Subsection (b) (2) excepts "Sales of personal property made pursuant to sealed competitive bids made by the employee, . . . either for himself or on behalf of any business entity; . . ."

Young points to evidence that his interest in Creek Sands terminated prior to its incorporation in February 1987, and that sales of personal property to the county by the corporation were made pursuant to sealed competitive bids. As previously noted, evidence as to both issues was in conflict. " 'It is the function of the jury to determine the credibility of the witnesses, including that of the defendant. The jurors must weigh and resolve any conflicts presented by the evidence. The appellate court must view the evidence in the light most favorable to the jury's verdict. (Cit.)' [Cit.]" *Rayburn v. State*, 194 Ga. App. 676 (1) (391 SE2d 780) (1990). The evidence presented at trial was sufficient to enable any rational trier of fact to find appellant guilty beyond a reasonable doubt of the acts charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Young asserts that the trial court erred in denying his motion for a directed verdict of acquittal on the ground that there existed a fatal variance between the allegata and probata, in that the indictment charged the sale of "creek sand and gravel," while the proof demonstrated that the substance sold was "chert."

"Under *DePalma v. State*, 225 Ga. 465, 469 (169 SE2d 801) (1969), and *Dobbs v. State*, 235 Ga. 800 (3) (221 SE2d 576) (1976), '(n)ot every variance in proof from that alleged in the indictment is fatal.' *Givens v. State*, 149 Ga. App. 83, 86 (253 SE2d 447) (1979). The crucial requirements are (1) that the accused be definitely informed as to the charges against him, so that he is able to present his defense, and (2) that he may be protected against another prosecution for the same offense. *DePalma*, supra. Unless the variance subjects defendant to one of these dangers it is not fatal. See *Dobbs*, supra at 802, which noted that the fatal variance doctrine had previously been applied too restrictively. . . . The true inquiry is whether there has been such a variance as to 'affect the substantial rights' of the accused. [Cits.]" *Glass v. State*, 199 Ga. App. 530, 531 (1) (405 SE2d 522) (1991).

Whether the substance supplied to the county was creek sand, gravel or chert, it was invoiced as chert, defined in Webster's New International Dictionary as "any impure flintlike rock." Gravel is "loose or unconsolidated material consisting of rounded fragments of rock ranging in size. . . . Material of finer particles is classed as sand." Ibid. As in *Glass*, supra at 532, Young "had notice of the charges against him and was not surprised nor prevented from preparing his defense. There was no danger that he would be placed in jeopardy twice for the same offense. *Fatal* variance is absent."

*Case Nos. A92A0931, A92A0932*

The indictment charged Young and Jackson, employees of Carroll County, with selling to Carroll County, for themselves and in behalf of Terre Tote, Inc., road base material described as chert on 16 occasions beginning September 2, 1987, and ending July 25, 1988, totaling sales of $535,519.20.

Chronologically, the evidence offered in the second trial continues near where the scenario in the first concluded.

In April 1987, Young, an employee of Carroll County, asked Hollingsworth, doing business as Creek Sands, Inc., to supply chert for an ongoing county road construction project. Based solely on Young's request and in the absence of competitive bidding, a contract between Creek Sands, Inc. and the county resulted.

In June, Hollingsworth advised Young that he no longer wanted to be involved with Creek Sands, Inc. One week later Hollingsworth was approached by Jackson, who inquired about purchasing the assets of the corporation. The two agreed upon terms by which Jackson, operating as a new corporation, Terre Tote, Inc., would purchase Creek Sands' assets, i.e., certain equipment and the contract to supply chert to Carroll County. Jackson, operating as Terre Tote, Inc.,

acquired the business on July 20.

A hauling contractor, who had been hired by Young to do work for Creek Sands, Inc. testified that in June or July, Young told him "he had to have a man up front . . . [and that] he was going to get [appellant] Jackson" to run the business. He further testified, "After they named it Terre Tote, . . . I knew whose it was . . . Joe Young's." The contractor continued to work for Terre Tote, Inc., receiving his instructions from either Young or Young's son Keith. He was paid by Jackson.

Paul Ballard was a traffic engineer for the county in 1986 and became road superintendent in March 1987. He and Young, co-workers at that time, jointly purchased a loader which they rented to the county. In late May 1987, Young told Ballard that Jackson would be "the man who would handle the business for us . . . [because they] needed someone who was separate from the county . . . who could sign contracts and borrow money and basically run the company." Young, Jackson and Ballard were operating Terre Tote, Inc., "the company [which] was selling chert to the county." Jackson would bring Terre Tote's invoices to Ballard who would approve them on behalf of the county and forward them to the commissioner's office for payment. Sealed competitive bids were not used; instead, Ballard and Young jointly arrived at the price to be quoted. Ballard was paid in cash by Jackson on behalf of Terre Tote, Inc. He later pled guilty to violations of OCGA § 16-10-6 (b).

Young's involvement in Terre Tote's business was confirmed by Jerry Wiggins, when Young approached in 1987 with an offer to purchase chert for county road construction. Young told him he would be dealing through Terre Tote, Inc. or Jackson. Wiggins and Young worked out the details of a contract. Wiggins and Jackson, acting on behalf of Terre Tote, Inc., executed it. Although Young did not represent that he was part of the corporation, "any time [Wiggins] had a problem with Terre Tote or Jackson, [he] had to deal with [Young] to get it resolved."

Witnesses for the State testified that Young and Jackson together operated Terre Tote, Inc. The record reveals that invoices were introduced reflecting charges to the county by Terre Tote, Inc. and payment received by the corporation only with respect to 13 of the 16 transactions specified in the indictment. Counts 13, 14, and 15 of the indictment are not supported by the evidence. Accordingly, the judgments of conviction and sentences as to Counts 13, 14, and 15 are reversed. The case is remanded to the trial court for resentencing as to Counts 1 through 12 and Count 16.

3. Appellants allege they were improperly convicted on the uncorroborated testimony of accomplice Paul Ballard, in violation of OCGA § 24-4-8.

"In Georgia, a defendant may not be convicted on the uncorroborated testimony of an accomplice. OCGA § 24-4-8. . . . The corroboration must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. [Cit.] 'However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. (Cit.) Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. (Cit.)' [Cit.]" *Castell v. State*, 250 Ga. 776, 780 (1) (c) (301 SE2d 234) (1983). The evidence was sufficient to corroborate Ballard's testimony as to appellants' involvement in the corporation which sold chert to the county.

### Case Nos. A92A0933, A92A0934

The indictment charged Young, Jackson and others with one count of conspiracy to defraud a political subdivision, OCGA § 16-10-21, by unlawfully conspiring to commit theft of tax money belonging to Carroll County. Seventeen overt acts were specified in furtherance of the alleged conspiracy, occurring between October 1, 1986 and December 1, 1988.

The evidence was for the most part duplicative of the two prior trials. Hollingsworth, Cooke and Ballard were the primary witnesses for the State. The transactions alleged in the two previous indictments provided the bases for the seventeen overt acts.

4. Appellants challenge the sufficiency of the evidence in connection with the conspiracy conviction, claiming there was no proof of their intent to defraud the county.

"A person commits the offense of conspiracy to defraud a political subdivision when he conspires or agrees with another to commit theft of any property which belongs to a political subdivision or to any agency thereof or which is under the control of possession of an officer or employee of a political subdivision in his official capacity. The crime shall be complete when the conspiracy or agreement is effected and an overt act in furtherance thereof has been committed, regardless of whether the theft is consummated." OCGA § 16-10-21 (b).

Assuming without deciding that appellants were initially misinformed about the unlawfulness of their business ventures, they later learned that what they proposed to do was in violation of the criminal code. The jury was instructed that essential elements of conspiracy are knowledge and intent to agree to a wrongful act. There was substantial evidence from which the jury could conclude that with that knowledge, appellants conspired to transact the business of the two corporations.

5. Appellants contend that the trial court erred in denying their plea in bar to the conspiracy indictment.

First, they argue that because ten of the seventeen alleged overt acts took place more than four years prior to the return of the indictment and are outside the statute of limitation, the entire indictment is invalid. The crime is complete when the agreement is effected and *an* overt act in furtherance thereof has been committed. Even if an overt act occurring outside the statute of limitation would not support the conspiracy charge, there was substantial evidence of acts having occurred within that period. "One or more of the overt acts being proven to the jury beyond a reasonable doubt satisfies the state's burden. . . ." *Moser v. State*, 178 Ga. App. 526, 531 (343 SE2d 703) (1986). Indeed, the jury was instructed, without objection by appellants, that: "It is not necessary for the State prove all the overt acts alleged in the indictment. The crime shall be complete when the . . . agreement is effected and one or more of the overt acts alleged in the indictment in furtherance thereof has been committed. . . . This overt act must be proved beyond a reasonable doubt and must have occurred on or after April 5, 1987 (the expiration of the statute of limitation) and must have been in furtherance of the conspiracy." The additional acts set out in the indictment could be considered mere surplusage. The plea in bar was properly overruled on this ground.

In *State v. Shepherd Constr. Co.*, 248 Ga. 1 (281 SE2d 151) (1981), dismissal of a conspiracy count of an indictment was authorized where the four-year period of limitation had expired. In the present case, the period of limitation had run only with respect to some, but not all, of the alleged overt acts. The alleged conspiracy endured within the statute of limitation.

Appellants also assert that the conspiracy indictment is barred by the statute of limitation because the *first* overt act in furtherance thereof was allegedly committed outside the limitation period. Since OCGA § 16-10-21 provides that the crime is completed when the agreement is effected and *an* overt act in furtherance thereof committed, they contend that the entire indictment is defective. That is too narrow an interpretation of the statute. The conspiracy is complete if the agreement and "an overt act" in furtherance thereof occur within the limitation period. Appellants' reading of the statute would allow a conspiracy to continue, but bar prosecution, if the conspiracy was not discovered until four years after the first overt act "completed the crime."

6. The trial court did not err in denying appellants' special demurrer to the indictment on the ground that it lacked the requisite specificity. The indictment satisfied the requirements set out in *Wright v. State*, 216 Ga. 228 (115 SE2d 331) (1960), that it state with

particularity the nature of the agreement, the exact end to be accomplished thereby and the property of the State at which the conspiracy is aimed. The statute at issue in *Wright* was the predecessor to OCGA § 16-10-21 (Ga. Code Ann. § 26-4201), which did not require the commission of an overt act. The court opined that "[w]ere an overt act necessary to complete the offense, a different rule might obtain." *Wright*, supra at 232.

7. For the reasons set forth in Division 5, the trial court properly permitted witnesses Cooke and Hollingsworth to testify to events which allegedly occurred outside the statute of limitation. To the extent that appellants assert the testimony improperly introduced their characters into evidence in violation of Uniform Superior Court Rule 31.3 (B), no such objection was made at trial. It will not be considered for the first time on appeal. *Hunter v. State*, 202 Ga. App. 195 (3) (413 SE2d 526) (1991).

*Judgments affirmed in Case Nos. A92A0930, A92A0933, and A92A0934. Judgments affirmed in part, reversed in part, and remanded for resentencing in Case Nos. A92A0931 and A92A0932. Birdsong, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 8, 1992.

*Word & Flinn, Gerald P. Word*, for appellants.
*Peter J. Skandalakis, District Attorney, Mark A. Gomez, Assistant District Attorney, William G. Hamrick, Jr., Special Assistant District Attorney*, for appellee.