HARRIS *v.* THE STATE.

No. 12930. SEPTEMBER 16, 1939.

*M. C. Barwick* and *J. Roy McCracken,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, J. Cecil Davis, solicitor-general, C. E. Sutton, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

REID, Chief Justice. John Sherman Harris was convicted of the murder of Clelian Chalker, without a recommendation of mercy. His motion for a new trial was overruled. While Harris alone was indicted, the State contended that a conspiracy existed between him and another person who, in the record, is described as a mysterious stranger. The State depended for the conviction solely upon circumstantial evidence. In brief, it appears that early on the day of the homicide, an unidentified person appeared at the home of the defendant. During the day he went hunting with one of the defendant's employees. The defendant arrived at Chalker's store in Gibson about nine o'clock in the evening, where, with others, he remained until about ten o'clock, when Chalker, after

placing the day's cash receipts in his pocket, closed the store, entered his automobile, and left for home. The defendant thereupon entered a nearby café, where he remained for a few minutes. He left alone. Within fifteen to twenty minutes he returned to the café and stated to the sheriff that while on his way home he discovered that some one was attempting to rob Chalker. Whereupon the defendant, the sheriff, the town marshal and another returned to the scene of the supposed robbery, which was at a point on the highway about one and a half miles from Gibson, and at a point about three hundred yards from the defendant's home. In the distance a person with a flashlight was approaching. When he came within about twenty-five yards of the highway he turned and fled in the direction of the defendant's home. The marshal shot twice at the fleeing person, and, without success, undertook to capture him. Chalker's dead body was found about forty yards from the highway and about two hundred and fifty yards from where Chalker's car was found. Some boys in a house near the highway heard a shot during the evening, and, on looking toward the highway, saw two automobiles. Later they heard two shots and saw two automobiles near the same point on the highway. Later in the night the defendant went home, where he was overheard by a colored girl (who testified that she heard some one groaning on the back porch) to ask his mother as to what he should do about the stranger. She replied that he should send him away. In his statement to the jury the defendant said that the stranger came to see him about making liquor; that he did not ask his mother about removing the stranger, but he did ask her about that "stuff," meaning liquor, which he had stored on the place, and that he did not have any connection with the murder of Chalker.

■ The first ground of the amendment to the motion for a new trial complains that the court erred in admitting the opinion or conclusion of the sheriff, who, over objection, was permitted to testify: "If Mr. Harris [the defendant] had come straight to me and found me, and then I did what I have detailed to the jury, and we went back out there with the same speed, I don't think the man out there would have time to get Mr. Chalker out of the automobile and let him stay in the ditch long enough for blood to have run so as to leave a place about the size of a saucer, and then dragged him forty or fifty feet and leave him there long

enough for a spot of blood about the size of a saucer to accumulate, and then have dragged him to where the body was found, and then have gotten in the automobile and turned it around and driven the automobile some 300 yards and then hide behind the house before I got there in Mr. Harris's automobile." The attack made in this ground must be sustained, because the witness, as to a vital matter, was permitted to enter the domain of the jury. All the facts and circumstances were detailed by the witness, and it was the right and *duty* of the jury to form its own conclusions, uninfluenced by the opinion of the witness. Although the opinion of a witness as to a fact is admissible where it is impossible to detail the circumstances which lead him to a particular conclusion, or it is impossible to give the jury sufficient data for them to make a conclusion, and it is permissible for a witness, after the facts and circumstances upon which his conclusion is drawn are stated, to give an opinion, a witness can not state an opinion or conclusion where the data or facts are such that the jury can make its own calculations or conclusions. *Allison* v. *Wall,* 121 *Ga.* 822, 827 (49 S. E. 831); *Pride* v. *State,* 133 *Ga.* 438 (56 S. E. 259); *Clifton* v. *State,* 187 *Ga.* 502 (2 S. E. 2d, 102); Code, § 38-1708. As stated by the court in the *Allison* case, supra, "It was not competent for a witness to give his opinion as to what was a reasonable time within which the trees should have been boxed and the timber cut. . . So, too, there might be cases in which it would be proper for opinion evidence to be introduced as to what would be a reasonable time for the performance of a given act. But in such instances its admissibility would grow out of the peculiar facts and result from the inability of the witness to give the data or to detail the circumstances on which he based his conclusion, and also from the impossibility of persons unfamiliar with the special business making the calculation. But in the present case there was no difficulty in the jury making the proper calculation as well as an expert, if they were furnished with the proper data."

The opinion of a witness is not admissible as evidence when all the facts and circumstances are capable of being clearly detailed and described so that the jurors may be able readily to form a conclusion therefrom. *Mayor &c. of Macon* v. *Humphries,* 122 *Ga.* 800 (2) (50 S. E. 986); *Dowdy* v. *Ga. R. Co.,* 88 *Ga.* 726 (16 S. E.

62) ; *Ford* v. *Kennedy*, 64 *Ga.* 537 ; *Howell* v. *Howell*, 59 *Ga.* 145 ; *Marshall* v. *Pierce*, 136 *Ga.* 543 (3) (71 S. E. 893) ; *Peterson* v. *State*, 47 *Ga.* 524, 529. The sheriff was permitted to give as his opinion or conclusion that sufficient time did not elapse, between the time the defendant left the scene of the murder and his return thereto, to enable "the man out there" to move the body and the automobile of the deceased as it appeared to have been moved. The effect of the sheriff's testimony is to say, in view of the facts and circumstances as outlined, that in his opinion the defendant either entered into a conspiracy with a third person to kill the deceased or aided and abetted him before and after the homicide. All of these were matters about which the facts had been given, and the jury was fully capable of drawing its own conclusion. The admission of the sheriff's conclusion or opinion was harmful error, especially as the guilt of the defendant depended solely upon circumstantial evidence.

■ Grounds 5 and 6 of the motion will be treated together. The movant assigns error because one of the trial jurors, Grover May, was related by consanguinity and affinity within the sixth degree to Elias Daniel and his wife, each of whom contributed to a fund to prosecute · movant and to apprehend a mysterious stranger alleged by the State to be connected with movant in the · murder of Clelian Chalker; that juror May was disqualified by relationship, being related within the sixth degree to Olin Kent, who contributed to a fund to aid in the investigation of the murder and to apprehend a mysterious man alleged to be connected in the murder with movant; that at the time of the trial movant and his counsel were unaware of the relationship and of the fact that the Daniels and Kent were volunteer prosecutors; that they sought at the trial to discover relationship and contributors, but failed to learn of such facts until after the trial and conviction. Ground 6 complains because one of the trial jurors, G. M. Walden, was disqualified, as he was related to J. A. Williams within the sixth degree; that Williams contributed to a fund to apprehend and prosecute a mysterious man alleged to be connected with movant in the murder, and therefore was a volunteer prosecutor; that, although diligent, movant and his counsel did not ascertain the facts until after the trial and conviction. Supporting affidavits were part of the motion. Mrs. Leona ·Daniel swore,

that her husband Elias (now deceased) carried around a list seeking subscriptions to aid in the prosecution of the defendant; that she and her husband contributed to this fund; and that her mother was a sister of Daniel May, who is the father of Grover May, who served as a juror. Olin Kent deposed that he contributed ten dollars to aid in finding who was the mysterious stranger connected with Harris in the murder; that his great-grandmother, Emily May Kent, and Daniel May, the father of juror Grover May, were brother and sister; and that deponent and Grover May are third cousins. Steve Harrell made an affidavit that Olin Kent and Grover May, a juror, are third cousins. J. A. Williams made affidavit, that he contributed to a fund to aid in the prosecution of the slayer of Chalker; that his grandfather, Ose Walden, and Mitch Walden were brothers; that Mitch Walden was the grandfather of G. M. Walden, one of the jurors, and that by reason of the facts set forth in his affidavit he and juror Walden are third cousins. The affidavits of jurors May and Walden show that they had no knowledge of any contributions to a fund to aid in the apprehension or prosecution of any one. Other affiants state that the fund collected was not used, nor was it to be used, in the prosecution of the defendant, Harris. Counsel for the State and other deponents show that they were unaware of any fund, and that no part of any fund was used either to apprehend or to prosecute the defendant. The affidavits of the movant and his counsel show due diligence in their timely efforts to ascertain the identity of contributors, and the qualifications of jurors at the trial. Kent and Williams, in subsequent affidavits, deposed that they did not contribute to any fund to aid in the prosecution of Harris, but that they did contribute to aid in the apprehension of the mysterious stranger. Harden swore that he was present when Mr. and Mrs. Daniel contributed, and that they made contributions, not to prosecute Harris, but to investigate and apprehend the mysterious stranger. These affidavits by relatives, showing relationship to the challenged jurors, were not denied by the jurors or by any one. The affiants were in position to state the facts of relationship; and their affidavits were properly admitted. Code, § 38-303; *Wilson* v. *State,* 173 *Ga.* 275 (160 S. E. 319). In *Davis* v. *State,* 150 *Ga.* 19 (102 S. E. 345), it does not appear that affiant was deposing as a relative of the juror. There is no issue here as to

relationship. The cases cited by the State, which make the judge the trior of the fact of relationship, are not applicable here, because in those cases relationship was made an issue by denial.

The State contends, that contributions to a fund by relatives of jurors to aid in the prosecution of the mysterious and unidentified stranger did not disqualify jurors May and Walden to act in the Harris case; that a conspiracy existed between Harris and the mysterious stranger; and that the defendant aided and abetted his co-conspirator in the execution of the conspiracy before and after the killing. The case was tried on this theory, and the court instructed the jury on the subject of conspiracy. It has been held by this court that where A and B are jointly indicted, and where A is on trial, relatives within the sixth degree of B are not qualified jurors. *Cambron* v. *State,* 164 *Ga.* 111 (137 S. E. 780). It is conceded by the State that contributions were made by relatives of jurors for the purpose of apprehending the mysterious stranger. The contributors were, of course, interested in the apprehension and prosecution of the slayer or slayers of the deceased. Such being the case, the interest of the jurors would be the same as to the alleged co-conspirator as it would be to the defendant. The rule of law that disqualifies a juror where he is related within the prohibited degree to a prosecutor or to one of the defendants in a joint indictment applies in principle in a case where a conspiracy is alleged to exist between two persons, although only one is indicted and on trial. Mrs. Daniel deposed that she and her husband contributed to a fund to aid in the prosecution of the defendant, who was then under arrest and charged with the murder of Chalker. Kent and Williams deposed that they contributed to a fund to aid in finding and prosecuting the mysterious stranger and the slayer of Chalker. It has been held by this court that one who contributes to a fund for the purpose of defraying the expense of apprehending the criminal or for the prosecution of the case is a prosecutor. *Dumas* v. *State,* 62 *Ga.* 58; *Lyens* v. *State,* 133 *Ga.* 587 (66 S. E. 792). A juror who is related within the sixth degree of consanguinity or affinity to the prosecutor is disqualified. The fact of relationship disqualifies. The fact that the juror did not know of the relationship or that his kinsman was a prosecutor does not relieve the disqualification. *Brown* v. *State,* 28 *Ga.* 439; *Ledford* v. *State,* 75 *Ga.* 856; *McElhannon* v. *State,* 99 *Ga.* 672

(26 S. E. 501) ; *Crawley* v. *State,* 151 *Ga.* 818 (108 S. E. 238, 18 A. L. R. 368) ; *O'Berry* v. *State,* 153 *Ga.* 644 (113 S. E. 2) ; Ga. L. 1935, p. 396.

In *Ga. R.* v. *Cole,* 73 *Ga.* 713, it was said: "A jury composed of men who are not lawful men—men whose relationship to the parties renders them incompetent as jurors, can not render a lawful verdict. If the parties consent to the jurors, or have knowledge of their incompetency, then they will be held to waive the same. It can not be said that the defendants in error have had their case tried; certainly not legally, and, although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside."

In *Temples* v. *Central of Ga. Ry. Co.,* 15 *Ga. App.* 115 (82 S. E. 777), in an opinion by Judge Russell it was said: "The point to be determined in every case where a juror is attacked as being incompetent propter affectum is not only whether the juror himself is interested, but also whether he may not be affected by interest in favor of one of the parties. It is immaterial whether he is affected by a direct personal interest in the case, or an indirect interest in the result as affecting some one else—favor. Is he an impartial juror in the sense of that term as used in the constitutional provision which guarantees an impartial trial? In determining the scope of those rulings of the Supreme Court in which it was held that jurors should be above every exception, it seems to us that great importance is to be attached to the ruling, several times made, that the juror should be free from the suspicion of bias. The use of this language would certainly seem to import that the general rule is to be liberally construed, so as to include any reasonable probability that no party will be deprived of the right of trial by an impartial jury, and not that the jury should be held to be impartial merely because, forsooth, the objection to the juror does not come strictly within the rulings in some of the adjudicated cases, or because the facts upon the issue submitted are not identical with those with which some of the adjudicated cases dealt. As we see it, the cardinal underlying principle in every adjudication in Georgia in which a juror has been held to be incompetent is that upon the discovery of facts which, without dispute, or in the court's judgment if there is conflict in the evidence,

evince good reason for interest or bias in the case, the court will take judicial knowledge of the fact that in all human probability the influence disclosed would operate upon the juror and move him to act in accord therewith." The law seeks always to assure to the person charged with crime that he shall have an unbiased jury. Every precaution is taken to attain that end. If a crime has been committed, and a particular person other than an officer of the law, who has a specific duty with reference thereto, should take such an interest in apprehending the person who is supposed to have committed the crime that he contributes of his funds to aid in the apprehension and prosecution of such person, it seems to us that he would not be a competent juror on the trial of another person alleged to have conspired with the absent one and to have aided him in the commission of the crime, and that those related to such contributor within the prohibited degree would thus be barred from passing judgment on the person being tried.

■ Complaint is made that the court erred in charging the jury on the subject of conspiracy. It is conceded that the charge stated correct principles of law, but the contention is that since the defendant alone was indicted, the charge was unwarranted. Although no other person was jointly indicted, and the indictment charged no conspiracy, yet it seems clear from the evidence that the theory of the prosecution was that the defendant conspired with and aided and abetted the mysterious stranger in the commission of the crime. Throughout the whole evidence it was difficult to separate the so-called mysterious stranger from the alleged acts and conduct of the defendant, in the circumstances relied upon for his conviction. In this situation we do not think it was error to give in charge appropriate principles of law which would fix the guilt of a person aiding and abetting or conspiring or acting together with another in common design for the commission of a crime, there being circumstances in evidence which might *tend* to connect the defendant with the absent one. *Hudgins* v. *State,* 61 *Ga.* 182; *Slaughter* v. *State,* 113 *Ga.* 284 (38 S. E. 854, 84 Am. St. R. 242).

■ The other complaints relate to occurrences during the trial, such as improper argument of counsel, and to the disqualification of a juror because of alleged bias. Since these are matters which probably would not occur on another trial, and since the judgment

is reversed on other grounds, they will not now be reviewed. We are of the opinion that, for the reasons set forth in divisions 1 and 2, the court erred in overruling the motion for new trial.

*Judgment reversed. All the Justices concur.*