## A98A0442. ENGLAND v. THE STATE.
(502 SE2d 770)

SMITH, Judge. ·

Jenny Carol England was charged by accusation with DUI, OCGA § 40-6-391 (a) (1), no proof of insurance, OCGA § 40-6-10, violation of the open container law, OCGA § 40-6-253, and operating a motor vehicle without first obtaining a valid driver's license after receiving notice that she was a habitual violator, OCGA § 40-5-58. She pled guilty to all counts and received a felony sentence. England subsequently moved for withdrawal of the guilty plea and filed a "motion to enter valid judgment." From the denial of these motions she appeals.

1. England contends the trial court erroneously denied her motion to withdraw her guilty plea. On the day trial was to begin, she announced to the court that she was not ready to proceed because her witnesses were not available. The witnesses were not under subpoena. When the trial court refused to continue the case, England then pled guilty. She now claims the plea was involuntarily made because her only other option was to go to trial without her witnesses and because the trial court indicated that the penalty against her might be more severe if she went to trial.[1]

A trial court's ruling on a motion to withdraw a guilty plea after sentencing is pronounced will not be disturbed absent an abuse of discretion. *Moore v. State*, 225 Ga. App. 860, 861 (2) (485 SE2d 552) (1997). We find no such abuse of discretion in this case.

The court informed England of the charges against her, that she could be sentenced up to six years in prison, and that the burden was on the State to prove her guilt beyond a reasonable doubt. The court further explained to England that she waived her rights to a jury trial, to cross-examine and subpoena witnesses, and to testify if she desired. England acknowledged that she wanted to give up those rights and plead guilty. She also acknowledged that she was driving under the influence of alcohol in December 1995, that she did not have proof of insurance when she was stopped, that her vehicle contained an open container of beer, and that she was operating her vehicle after having been declared a habitual violator. The trial court's explanation to England of the rights she was waiving by pleading guilty and her acknowledgment that she committed the crimes to which she pled guilty satisfy us that her plea was voluntarily made. See *Harper v. State*, 225 Ga. App. 510, 511 (484 SE2d 307)

---

[1] The trial court stated to England's defense counsel, "I'm sure you've told her that she faces a substantial risk by going to trial, because at that point there is no recommendation that the Court would be inclined to follow."

(1997); *Johns v. State,* 223 Ga. App. 553, 554 (1) (479 SE2d 388) (1996).

The unavailability of England's own witnesses when her case was called to trial is not imputable to the trial court or to the State. It was England's "duty to ensure the presence of such witnesses by issuance of subpoenas. [Cits.]" *Byron v. State,* 229 Ga. App. 795, 799 (6) (495 SE2d 123) (1997). Furthermore, the trial court's statement that the penalties against England might be more severe if she went to trial affords no basis for finding that her plea was involuntarily made. In determining whether her plea was voluntary, "the determinative issue is whether the plea represents a voluntary and intelligent choice among the alternative courses of action available to [England]. That [she] would not have pleaded but for the desire to avoid receiving a longer sentence is not the type of coercion which prevents a plea from being free and voluntary." (Citations and punctuation omitted.) *Moore,* supra at 862 (2).

We also reject England's argument that the trial court erroneously required her to prove that her plea was involuntary. England correctly argues that the State faces the burden of showing that a guilty plea was voluntarily made. See, e.g., *Johns,* supra at 553. Here, the trial court apparently did ask England to come forward with evidence in support of her motion to withdraw. But regardless of what the court asked England to do, the State fulfilled its burden. It is well settled that the State can meet its burden of showing that a guilty plea was voluntarily made by showing on the record of the guilty plea that the defendant was aware of the rights he or she waived and the possible consequences of entering a plea. *King v. State,* 215 Ga. App. 139, 140 (1) (449 SE2d 870) (1994). The State has pointed to the record of the guilty plea hearing; it affirmatively shows that England was aware of the nature of the charges against her as well as the possible consequences of her plea. We find no merit in this argument.

Finally, England maintains that her plea was not "knowingly" made, claiming that she did not understand "the law in relation to the facts." The record belies this contention, as England acknowledged that she had driven a motor vehicle after being declared a habitual violator and that she understood the possibility that she could be sentenced to six years in prison.

2. (a) On appeal from the denial of her "motion to enter valid judgment," England contends she should have been sentenced only for a misdemeanor violation of OCGA § 40-5-58. She first claims that the felony sentence entered was unlawful because OCGA § 40-5-58 prescribes both a felony offense and a misdemeanor offense, and the language of the accusation did not specify the felony.

It is true that under OCGA § 40-5-58 (c) (1), a driver may be con-

victed of either a felony or misdemeanor. See *Hyde v. State*, 205 Ga. App. 754, 755 (424 SE2d 39) (1992). Reciting OCGA § 40-5-58, the accusation here charged England with the offense of habitual violator in that, on December 28, 1995, "without first obtaining a valid drivers licenses [sic], [she] operate[d] a motor vehicle in this state after receiving notice that she was a habitual violator, that her licenses [sic] was revoked, and that it was unlawful for her to operate a motor vehicle in this state." England claims that this language charged her only with a misdemeanor violation because it failed to allege the date of the notice of revocation or the fact that her conduct occurred within five years of revocation.

This argument addresses an alleged defect in the accusation and therefore should have been raised on special demurrer. "By charging in an indictment [or accusation] a crime capable of being committed in more than one way, a failure to charge the manner in which the crime was committed subjects the indictment to a proper special demurrer. [Cit.]" *State v. Black*, 149 Ga. App. 389, 391 (4) (254 SE2d 506) (1979). England did not make this challenge to the accusation by way of special demurrer prior to pleading guilty, however, and consequently has waived her right to raise the argument on appeal. See *Dunbar v. State*, 209 Ga. App. 97, 98 (432 SE2d 829) (1993); *Ivie v. State*, 151 Ga. App. 496, 497 (2) (260 SE2d 543) (1979).

(b) England also argues that she was guilty as a matter of fact only of a misdemeanor violation of OCGA § 40-5-58. She bases this claim on the language contained in the notice of revocation, dated May 11, 1991, which listed the three prior DUI convictions on which habitual violator status was based. The notice recited: "Your driver's license and privilege to operate a motor vehicle in this state is revoked for a minimum of (5) five years from date license surrendered." The notice then required England to surrender her driver's license to the State Department of Public Safety. England argues that the language stating that her license was revoked for five years from the "date license surrendered" misled her into believing that she "surrendered" her license for purposes of beginning the five-year revocation period in September 1989 when she was stopped for DUI in 1989 and therefore that by driving six years later, in December 1995, she committed only a misdemeanor.

We find no merit in England's argument for three reasons. First, as a matter of law, the five-year revocation period began in May 1991, when England was notified of her status as a habitual violator. See *Hyde*, supra, 205 Ga. App. at 754-755 (notice that license has been revoked as habitual violator essential element of violation of OCGA § 40-5-58 (c) (1)). See also OCGA § 40-5-60 (all revocations effective on day driver receives actual knowledge or legal notice, whichever occurs first). England, who does not deny that she

received the notification in May 1991, drove a motor vehicle in December 1995, well within that five-year period, and therefore was subject to felony punishment.

Second, although England's notice stated that her license was revoked for five years from the "date license surrendered," it further required her to then surrender any driver's license in her possession to the State Department of Public Safety, giving her the address to which it must be surrendered and suggesting that she use certified mail. The clear import of the notice was that the "surrender" date of England's license was the date on which the license was turned over to this agency.

*Connelly v. State*, 181 Ga. App. 261 (351 SE2d 702) (1986), cited by England, is not controlling. In *Connelly*, defendant drove outside the five-year revocation period but without having obtained a valid driver's license. We concluded that the notice sent to defendant could have led him to believe that his habitual violator status would automatically expire within five years of revocation. The facts of this case are distinguished from those in *Connelly*. Here, England drove *within* the five-year revocation period, a felony violation. In *Connelly*, defendant committed only a misdemeanor offense by driving outside the five-year period without first obtaining a valid license. Furthermore, the issue in this case is not whether the notice could have led England to believe that the revocation period automatically expired, but whether it misled her into believing that the revocation period began in September 1989 rather than May 1991. A reading of the notice as a whole clearly shows that the date of surrender contemplated by the notice was the date that the license was surrendered to the State Department of Public Safety.

Third, we have determined in Division 1 that England's guilty plea was knowing and intelligent. It is clear from the transcript of the guilty plea hearing that England knew she was pleading guilty to a felony, as she acknowledged that by entering a guilty plea, she could receive up to six years in prison as a result of her violation. If she questioned whether she was entering a plea to a felony charge she should have raised the issue during the hearing. She failed to do so and cannot now complain. See *Harper*, supra, 225 Ga. App. at 512 (intelligent and voluntary guilty plea amounts to waiver of defenses known and unknown).

3. England also claims she was denied effective assistance of counsel when she pled guilty and was sentenced for felony habitual violation. But this claim was not preserved for our review, as England's new counsel, who argued England's motion to enter valid judgment, failed to raise the claim first in the trial court. See *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996).

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

Decided June 11, 1998.

*James C. Bonner, Jr.*, for appellant.
*T. Joseph Campbell, District Attorney, Lance T. McCoy, Pamela D. Brophy, Assistant District Attorneys*, for appellee.