## A99A2273. FLEMING v. THE STATE.
### (526 SE2d 91)

ELDRIDGE, Judge.

On February 26, 1998, a DeKalb County grand jury returned an indictment against defendant, Eric Darnell Fleming, charging him with aggravated assault with the intent to murder (Count 1), aggravated assault with a deadly weapon (Count 2), and aggravated battery (Count 3). Following a jury trial, defendant was found guilty on Counts 2 and 3. The jury was unable to reach a unanimous verdict with respect to the charge of aggravated assault with the intent to murder, and the trial court entered an order of nolle prosequi on such count. Defendant was sentenced to 20 years to serve on Count 3.[1] Defendant appeals from the denial of his motion for new trial. We affirm.

In the light most favorable to the verdict,[2] the evidence shows the following: In December 1997, Ledbetter Industrial Construction ("Ledbetter") was involved in the construction of a parking deck at Perimeter Mall. Defendant was employed by Ledbetter as a welder. The victim was also employed by Ledbetter as the superintendent for this construction job and was responsible for paperwork, ensuring there were enough men to complete the work, hiring, and firing. At approximately 6:30 or 7:00 a.m. on December 15, 1997, the victim fired defendant because of the defendant's poor job performance and his failure to show up for work. When the victim informed defendant that he was fired, defendant became angry and demanded that he receive his last paycheck immediately. The victim explained to defendant that the paychecks were written in Alabama; that he had to fax the necessary paperwork to the Alabama office; and that defendant's check would be ready for him to pick up on Friday. Defendant demanded that the victim pay him the salary he was due from the victim's own money. When the victim told defendant he did not have that kind of cash, the defendant replied that he would "get [his] money one way or another today."

Defendant left, but returned in a few minutes and demanded to talk with Tim Garrison, who was the victim's supervisor. Garrison confirmed that defendant would have to wait until Friday to receive

---

[1] For purpose of sentencing, Count 2 merged with Count 3.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

his check. In order to try and appease defendant, the victim took defendant to the office, faxed the paperwork to Alabama, and called the company's owner to see if there was any way the defendant could be paid earlier than Friday. After receiving a negative reply from the owner, defendant left, stating again that "I'll get my money today."

Around 1:00 p.m. on the same day, defendant returned to the work site, approached the victim, and demanded his money. After the victim told him that his check would not be ready until Friday, defendant stated "Pay me. One way or another I am going to get my money." Defendant then pulled out a silver pistol and shot the victim. The defendant fled the scene.

The defendant was apprehended shortly thereafter by Metropolitan Atlanta Rapid Transit Authority ("MARTA") police near Perimeter Mall at the 1500 block of Hammond Drive. At the time of his arrest, defendant had a silver-colored, semi-automatic gun wrapped in his jacket. The gun had an empty shell in the chamber that had not been ejected. MARTA police placed defendant in handcuffs and held defendant at gunpoint until DeKalb County police arrived. Defendant was very excited, talkative, and was perspiring very heavily. Initially, while defendant was lying on the ground, he voluntarily and spontaneously and not in response to any questioning, stated several times "I did it." Defendant made further statements about how he was not respected, that derogatory racial references had been made toward him, and that he should not have been fired on his day off.

When DeKalb County police arrived, defendant was placed in Officer Thomas Moore's patrol car. For safety purposes, Officer Moore initially transported defendant to the North Precinct, which was approximately four blocks away. As they were en route to the North Precinct, defendant voluntarily and spontaneously and not in response to any questioning kept repeating "Yeah, I did it." He continued to talk about the racial epithet he had been called and stated that he should not have been fired on his day off. Officer Moore advised defendant that he should not make any more statements, but defendant continued to repeat the same statements until they reached the North Precinct. Shortly thereafter, Officer Moore transported defendant from the North Precinct to the DeKalb County Criminal Investigative Division ("CID") on Memorial Drive. At the CID, Officer Moore escorted defendant to the bathroom, and defendant voluntarily and spontaneously and not in response to any questioning stated that "Even if they give me life, I hope he pays."

Detective Sam Buice, who was assigned to the case, interviewed

defendant after giving him his *Miranda*[3] rights. During such interview, defendant admitted to shooting the victim. Detective Buice's written version of defendant's statement, along with a recorded statement, was admitted into evidence over objection. *Held*:

1. Defendant argues that the admission of his custodial statement was error due to an insufficient showing of voluntariness.

At an admissibility hearing under *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), and again at trial, Detective Buice testified that he met with defendant in an interrogation room at the CID at about 3:00 p.m. on the day of defendant's arrest; that he advised defendant that he intended to interview him about the case; and that immediately thereafter he advised defendant of his *Miranda* rights. Detective Buice further testified that, when he advised defendant of his *Miranda* rights, he placed the waiver of rights form in a position so that defendant could read along. Defendant indicated to Detective Buice that he understood his *Miranda* rights and signed a form acknowledging his understanding. Detective Buice went on to testify that he did not offer defendant any hope of reward or benefit for his statement.

Detective Buice then asked defendant to recount what had transpired. Initially, Detective Buice just took brief notes as defendant talked. Then, at Detective Buice's request, defendant repeated what had occurred so that Detective Buice could write down his statement as he was telling it. When Detective Buice completed the written statement, he gave it to defendant to review. After reviewing the statement, defendant refused to sign it. Thereafter, at Detective Buice's request, defendant agreed to give a tape-recorded statement. The tape-recorded statement was identical to the written statement as to the events that occurred all the way up to the point that defendant approached the victim with a gun. At that point, defendant indicated he did not want to talk any more, and the tape recorder was turned off.

Defendant testified at the *Jackson-Denno* hearing that Detective Buice showed him the waiver of rights form, but did not read the *Miranda* rights to him. Defendant also testified that, even though he had graduated from high school, he could not read well enough to understand those rights. Defendant further testified that he did not sign the waiver of rights form until the following morning as he was being taken to court.

In deciding the admissibility of a statement during a *Jackson-Denno* hearing, the trial court must consider the totality

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

of the circumstances and must determine the admissibility of the statement under the preponderance of the evidence standard. Unless the factual and credibility findings of the trial court are clearly erroneous, the trial court's decision on admissibility will be upheld on appeal.

(Citation and punctuation omitted.) *Dasher v. State*, 229 Ga. App. 41, 43 (2) (494 SE2d 192) (1997). Here, the trial court found that defendant was informed of his rights, that defendant made an intelligent waiver of those rights, and that both the written and the tape-recorded statements were freely and voluntarily given, without any threat, duress, or fear of harm and without any offer of benefit or reward. As these findings are supported by the evidence, the trial court did not err in admitting the statements.

2. Appellant contends that his trial counsel was ineffective.

"A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. [Cit.]" *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990).

To establish a claim of ineffective assistance of counsel, [defendant] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). [Defendant] must establish both the performance and the prejudice components of the *Strickland* test.

*Johnson v. State*, 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996). "A conviction will not be reversed on the basis of ineffective assistance of counsel unless counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citation and punctuation omitted.) *Cunningham v. State*, 222 Ga. App. 740, 743-744 (2) (475 SE2d 924) (1996); *Strickland v. Washington*, supra at 669.

Defendant urges that his counsel was ineffective because he had met with counsel for a total of ten minutes prior to trial and that, rather than prepare for trial, trial counsel pushed defendant to enter a plea because he did not believe defendant's version of what happened. However, the record does not support defendant's assertion, and, "[i]n any event, the amount of time trial counsel spent with [defendant] is not determinative of whether counsel rendered ineffective assistance." (Citations and punctuation omitted.) *Elrod v. State*,

222 Ga. App. 704, 708 (3) (b) (475 SE2d 710) (1996).

Trial counsel testified that he met with defendant on numerous occasions. The first time he met with defendant was prior to the preliminary hearing when he took a copy of the incident report to him and went over the facts of the case with him. Prior to arraignment, counsel filed a motion for bond reduction. Trial counsel testified that, prior to trial, he visited the defendant at the jail between five and ten times. Each of these visits lasted between 15 and 30 minutes. Trial counsel further testified that he reviewed the district attorney's file and made a copy of the file for himself and defendant; that he went over the list of witnesses with defendant; that he contacted members of defendant's family by telephone; that he attempted to contact all the witnesses on the district attorney's witness list; and that he attempted to locate additional witnesses who could substantiate defendant's version of the facts. Accordingly, the trial court's finding that counsel was not ineffective is not clearly erroneous.

3. In his final enumeration of error, defendant asserts that the evidence presented at trial was insufficient to support his conviction.

> On appeal[,] the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]

*Grant v. State*, 195 Ga. App. 463, 464 (393 SE2d 737) (1990); see also *Jackson v. Virginia*, supra. Viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the offenses for which he was convicted. Id.

*Judgment affirmed. Blackburn, P..J., and Barnes, J., concur.*

DECIDED NOVEMBER 22, 1999.

*Elliott A. Shoenthal*, for appellant.
*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.