A00A1635. TEW v. THE STATE.
(539 SE2d 579)

ANDREWS, Presiding Judge.

Craig Tew appeals from the judgment entered after a jury found him guilty of conspiracy to traffic in marijuana, armed robbery, three counts of aggravated assault and possession of a firearm during the commission of a crime. We find no reversible error and affirm.

The evidence at trial, taken in a light most favorable to the verdict, was that a confidential informant knew someone in the area who wanted to buy some marijuana. The confidential informant talked to Tew's co-defendant, Keshia Turner,[1] and arranged a meeting to discuss the sale. Turner did not mention that Tew would be

---

[1] Turner had already pled guilty and been sentenced.

involved in the deal and acted alone in talking and meeting with the confidential informant and undercover officer Prieto.

On the day of the drug buy, Turner and the confidential informant talked by phone about the substance and procedure of the pending deal. Tew was present but not on the line during any of these calls. Turner testified at trial that she and Tew were not going to pay for the marijuana, but instead planned to steal it.

That evening, Turner met with the confidential informant and Officer Prieto to finalize the plans for the sale. During this meeting, police officers who were monitoring from outside the restaurant saw Tew observing the meeting from a distance. After the meeting, Prieto opened the trunk of the car and showed Turner the marijuana. Turner and Prieto then agreed that Prieto would call her in approximately 30 minutes to set up a plan for the actual exchange.

After Turner left, Prieto took the marijuana out of the trunk for safe keeping and returned to a motel directly behind the Shoney's restaurant where the meeting had taken place. There were several other officers waiting in two of the rooms at the motel. The officers' plan was to make the sale and arrest in one room and monitor from the adjoining room. But, while Turner waited in the car, Tew approached Prieto, who was still sitting in his car. Tew told Prieto that he was there to complete the deal. Prieto became concerned that things were not going according to plan because Turner was supposed to be the only person involved in the deal. Prieto also saw that Turner was lying down inside Tew's car in the passenger's seat.

At that point, Tew accused Prieto of having something taped to his chest, and Prieto, who was wearing a body bug, raised the body bug along with his shirt so that Tew could not see it. Prieto then asked Tew if he was a cop, and Tew said no, bringing up his shirt with his left hand and simultaneously pulling out a gun with his right hand. Tew then asked Prieto for the keys to the car, and Prieto tossed them to him. Keeping the gun trained on Prieto, Tew tried to turn the key to unlock Prieto's car.

Prieto gave the signal that he was in trouble to the officers waiting in the motel room. When the officers came running out, shouting "Police," Tew started firing, hitting Officer Bixler. Bixler testified that he fell down after Tew shot him and Tew turned away from him to fire at the other officers. Bixler got up and said, "Police, drop your weapon," and Tew turned and shot him again. Tew was shot twice by the officers and, shortly afterward, was caught and arrested.

Tew testified in his own defense and said he went to the Shoney's restaurant that day looking for Turner. He said he was worried that she was in trouble with drug dealers. Tew claims he talked to Turner and she told him she was afraid and did not want to go through with the deal. Tew said he would go talk to the drug dealers for her and

tell them to leave her alone. Tew stated that when he started talking to Prieto, Prieto was loud and aggressive, and when Prieto reached behind him, Tew thought he was pulling out a gun. Tew then pulled out his own gun and pointed it at Prieto. Tew said Prieto threw him the car keys and then Tew saw "flashes" and realized he was shot. Tew said he turned to run and was shot again. He began shooting behind him in the direction of the gunfire.

Turner testified and said that she lived with Tew and the two of them planned to steal the 120 pounds of marijuana, not buy it. She said that she and Tew went to the motel to meet Prieto and she leaned down in the seat so that Prieto would not see her. Turner stated that Tew pulled his gun out and pointed it at Prieto and she thought he fired his gun before the officers began firing at him.

1. In Tew's first enumeration of error, he claims that the trial court erred in denying his motion to suppress evidence because OCGA § 16-13-49 (u) (1) requires the Gwinnett County Police Department to either destroy forfeited contraband that is dangerous to the public or send it to an appropriate agency for medical or scientific use. Tew claims that because possession of the marijuana used in the reverse sting was "illegal," all evidence gathered by police as a result of their use of this marijuana was fruit of the poisonous tree and must be suppressed.

We disagree. The exclusion of evidence is an extreme sanction and one not favored in the law. *State v. Roddy*, 231 Ga. App. 91, 93 (497 SE2d 653) (1998). Moreover, the exclusionary rule applies to evidence obtained in violation of a defendant's Fourth, Fifth and Sixth Amendment rights. See *United States v. Wade*, 388 U. S. 218, 237 (87 SC 1926, 18 LE2d 1149) (1967); *Massiah v. United States*, 377 U. S. 201, 206 (84 SC 1199, 12 LE2d 246) (1964); *Mapp v. Ohio*, 367 U. S. 643, 654 (81 SC 1684, 6 LE2d 1081) (1961); *Elkins v. United States*, 364 U. S. 206 (80 SC 1437, 4 LE2d 1669) (1960); *Blackburn v. Alabama*, 361 U. S. 199, 205 (80 SC 274, 4 LE2d 242) (1960). The exclusionary rule is not a personal constitutional right, but rather a judicially created remedy to deter government violations of the constitution. *United States v. Leon*, 468 U. S. 897, 906 (104 SC 3405, 82 LE2d 677) (1984).

Tew does not allege any violation of his constitutional rights, and there was none. The illegal act complained of is not the reverse sting, but instead the failure to destroy the marijuana used in the reverse sting.[2] Thus, the statute violated is one enacted to provide for the

---

[2] In *Dean v. Gober*, 272 Ga. 20 (524 SE2d 722) (2000), decided after the reverse sting in this case, the Supreme Court affirmed the trial court's order issuing a writ of mandamus requiring the Gwinnett County Police Department to comply with OCGA § 16-13-49 (u) (1). Id. at 21-22. The Court declined to reverse the trial court for refusing to order the destruc-

destruction of forfeited contraband dangerous to the public, not one enacted to protect a defendant's constitutional rights. Because the alleged illegal act did not violate any of Tew's constitutional rights, it did not result in evidence that must be suppressed. There was no error.

2. Next, Tew claims the trial court erred by denying his motion in limine to prevent the State from referring to the substance used by the police as marijuana. Tew argues that there was no scientific evidence introduced at trial proving the substance he was convicted of conspiring to traffic in was marijuana.

As the State points out, the crime of conspiracy to traffic in marijuana was complete before officers opened the trunk and showed Turner the marijuana. See OCGA § 16-4-8; *Young v. State*, 205 Ga. App. 357, 362 (422 SE2d 244) (1992) (crime of conspiracy is complete when the agreement is made and an overt act in furtherance of the conspiracy has been committed). Therefore, Tew has shown no harm from the trial court's decision to allow the State to refer to the substance as marijuana. Moreover, the testimony was relevant because it showed that Turner believed there was marijuana in the trunk. She in turn told Tew that it was marijuana, thus explaining the events leading up to the offenses of aggravated assault and armed robbery.

3. Tew next claims the trial court erred in refusing to charge the jury on entrapment. We disagree.

> In Georgia, the entrapment defense consists of three distinct elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must [be] induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime. [Cits.]

(Punctuation omitted.) *Gray v. State*, 191 Ga. App. 135, 136 (381 SE2d 312) (1989).

Because Tew never spoke with any State agent, there must be evidence at trial that Turner was entrapped in order to warrant a charge. We note, as the State points out, that the deal was for Turner to buy the marijuana in the reverse sting, not steal it. In any event, we find nothing in either the officers' or Turner's testimony which warranted a jury charge on entrapment. It is never error for the trial judge to refuse to charge on entrapment when the evidence fails to create a legal issue of entrapment. *Lawrence v. State*, 227 Ga. App. 70, 73 (487 SE2d 608) (1997).

---

tion of the specific contraband used in Gober's case, however, because it might still be needed for evidentiary purposes. Id. at 23.

4. Next, Tew claims the trial court erred in admitting into evidence a black handgun with similar characteristics to the gun Tew used to shoot the officer. Officer Prieto testified that the gun introduced at trial was black and was a semiautomatic pistol of the same type as the one used by Tew. Tew also stated that the gun "look[ed] like the gun that I had." Where, as here, a weapon is identified at trial as similar to the one used to commit the crime, the weapon is admissible, whether or not it is the identical weapon. *Duvall v. State*, 238 Ga. 325, 326 (232 SE2d 918) (1977).

*Paxton v. State*, 160 Ga. App. 19 (285 SE2d 741) (1981), relied on by Tew, is not to the contrary. In *Paxton*, the court held that it was error to introduce a gun into evidence when there was a dispute as to the actual existence of a real gun. Id. at 23. That is not the case here.

In addition, Tew has shown no harm caused by the introduction of the gun. Given that he admitted shooting at the officers and the undisputed evidence was that he did, in fact, shoot one of the officers twice, it is highly probable that any error in the gun's admission into evidence did not contribute to the judgment. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

5. Tew claims the trial court erred by refusing to charge the jury on the lesser included offense of robbery by intimidation. Although robbery by intimidation is a lesser included offense of armed robbery, failure to charge on this lesser included offense is not error where the evidence does not demand such a charge. *Holcomb v. State*, 230 Ga. 525, 527 (198 SE2d 179) (1973). Here, the uncontradicted evidence was that Tew pointed a gun at Officer Prieto and forced him to hand over the keys to the car. There was no evidence, therefore, that would have authorized a conviction for robbery by intimidation that would not also have demanded a conviction for armed robbery. *Griffeth v. State*, 154 Ga. App. 643, 645 (269 SE2d 501) (1980); *Lightfoot v. State*, 227 Ga. App. 605, 607 (490 SE2d 177) (1997).

6. In his next enumeration of error, Tew argues that the trial court erred in refusing his request to charge on reckless conduct as a lesser included offense of aggravated assault and aggravated assault on a police officer. Tew cites *Shaw v. State*, 238 Ga. App. 757 (519 SE2d 486) (1999), for the proposition that reckless conduct is a lesser included offense of aggravated assault in this case.

But, *Shaw* is not on point. In *Shaw*, there was evidence that the defendant fired into the air. Here, there was no such evidence presented.

Moreover, an essential element of reckless conduct is criminal negligence. *Hall v. State*, 235 Ga. App. 44 (508 SE2d 703) (1998); *Perryman v. State*, 208 Ga. App. 754 (431 SE2d 742) (1993). In this case, the undisputed evidence was that Tew pointed his gun at the victims and fired. There is no evidence that he was negligent in pointing the

gun or firing. Under these circumstances, it was not error for the court to refuse to charge on reckless conduct. *Hall*, supra at 47.

7. In his last enumeration, Tew contends the trial court erred in refusing to grant a new trial after it was learned that a juror was related to one of the officers who appeared in a video recording of some of the events that night. The officer did not take the stand at trial, but the video was shown to the jurors.

During voir dire, the juror did state that he had a nephew who was a Gwinnett County undercover drug investigator. But, it was not until after trial that Tew discovered that one of the investigators taking part in the reverse sting was the juror's nephew.

Tew cites to *Harris v. State*, 188 Ga. 745 (4 SE2d 651) (1939), as authority that a new trial is warranted when a defendant discovers after trial that a prosecuting witness is related to a juror. This is incorrect. *Harris* applied to a juror's relationship to prosecutors, not prosecuting witnesses.

Moreover, "[r]elationship to a witness is not per se a ground for excusing a prospective juror." *Brantley v. State*, 262 Ga. 786, 788 (2) (d) (427 SE2d 758) (1993). In this case, the juror's nephew was not even a witness. We find no error in the trial court's decision to deny the motion for new trial on these grounds.

*Judgment affirmed. Ellington, J., concurs. Ruffin, J., concurs in the judgment only.*

DECIDED SEPTEMBER 21, 2000 —
RECONSIDERATION DENIED OCTOBER 6, 2000.

*Kristopher Shepherd*, for appellant.
*Daniel J. Porter, District Attorney, James M. Miskell, Assistant District Attorney*, for appellee.