A02A1758. RAZOR v. THE STATE.
(576 SE2d 604)

JOHNSON, Presiding Judge.

James Russell Razor was charged with operating a motor vehicle after having been declared a habitual violator, driving while under the influence of alcohol to the extent he was a less safe driver, speeding, and following too closely. The state nolle prossed the charges of speeding and following too closely. A jury found Razor guilty of driving after having been declared a habitual violator and driving under the influence of alcohol. He appeals from the convictions entered on the verdict.

1. Razor challenges the sufficiency of the evidence to support the convictions. Viewing the evidence in a light most favorable to the verdict, it shows that on February 12, 2000, a deputy sheriff noticed Razor's car as it followed a dump truck. The deputy believed Razor was too close to the dump truck and was concerned that debris might come out of the dump truck, hit Razor's windshield, and cause Razor to lose control. Razor accelerated past the dump truck, and the deputy began following Razor. The deputy paced Razor and determined that he was traveling 56 mph in a 45-mph zone. The officer stopped Razor for speeding and following too closely.

As the deputy approached Razor's car, he saw an open container of beer on the floorboard near Razor's passenger. The deputy asked for Razor's license and proof of insurance. Razor produced a state-issued identification card and insurance card, but no driver's license. The deputy detected an odor of alcohol on Razor's breath and asked Razor if he had been drinking. Razor replied that he had consumed two beers.

The deputy ran a check on Razor's driver's license. The deputy found that Razor had been declared a habitual violator and that his

license had been revoked. Razor was personally served with notice of his status on June 23, 1995, which was less than five years before this stop.

At the deputy's request, a second deputy arrived to help administer field sobriety tests. Razor failed all but one test. The deputy read the implied consent notice and requested that Razor submit to a urine test. Razor did not respond, and the officer treated his unresponsiveness as a refusal to be tested.

The revocation notice signed by and served upon Razor satisfied the state's burden of showing Razor had been notified of his habitual violator status less than five years before he was stopped.[1] Thus, the evidence was sufficient for a rational trier of fact to find Razor guilty beyond a reasonable doubt of driving within five years after being declared a habitual violator.[2] Likewise, the deputy's observations were sufficient for a rational trier of fact to find Razor guilty beyond a reasonable doubt of driving while under the influence of alcohol to the extent he was a less safe driver.[3]

2. Razor contends the trial court erred in denying his motion to suppress evidence when the arresting officer lacked probable cause to make the initial traffic stop. Specifically, he argues that there was no evidence of speeding because there was no testimony regarding the time or distance involved in the deputy's pacing of Razor's car; and there was no evidence that Razor was following the dump truck too closely inasmuch as there was no testimony as to the distance between Razor's car and the dump truck, the speed at which those vehicles were traveling, or the road or traffic conditions.

To be lawful, an investigative stop of a vehicle must be based upon specific and articulable facts that, when taken together with the rational inferences arising therefrom, provide the requisite reasonable suspicion to warrant the intrusion.[4] In making this determination, we examine whether the officer had a particularized and objective basis for reasonably suspecting that the particular individual stopped was or had been engaged in criminal activity.[5] What is demanded of the police officer is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing.[6] Contrary to Razor's contention, the officer is not required to have probable cause to make the initial investigative stop.[7]

---

[1] See *Valentine v. State*, 229 Ga. App. 791 (1) (495 SE2d 116) (1997).
[2] See id. at 791 (2).
[3] See *Hunt v. State*, 247 Ga. App. 464, 466 (1) (542 SE2d 591) (2001).
[4] *McNeece v. State*, 246 Ga. App. 720, 722 (2) (541 SE2d 696) (2000).
[5] Id.
[6] *State v. Hall*, 235 Ga. App. 412, 414 (509 SE2d 701) (1998).
[7] *State v. Aguirre*, 229 Ga. App. 736 (494 SE2d 576) (1997).

In this case, the deputy gave specific reasons for stopping Razor's car. He testified that the car was following a dump truck too closely and was exceeding the speed limit. Pacing is an established method of determining vehicle speed.[8] The officer's observations and opinion as to speed were sufficient to authorize a stop. Moreover, the officer was authorized to stop and detain Razor because he saw Razor following the vehicle ahead of him too closely.[9] The fact that the two offenses leading to the stop were not prosecuted does not require a finding that the deputy lacked authority to stop Razor.[10] Because the deputy had specific and articulable facts which justified the stop, the trial court did not err in denying Razor's motion to suppress.[11]

3. Razor contends the trial court erred in not suppressing his statement that he consumed two beers, since he made the incriminating statement before the officer read him his *Miranda* rights and when he was not free to leave the scene of the traffic stop.

It is well established that the asking of routine questions during a traffic stop does not invoke *Miranda* requirements.[12] Although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights.[13] In applying the above-mentioned test and rationale, we have specifically held that roadside questioning during the investigation of a routine traffic incident generally does not constitute a custodial situation.[14] When a violator is placed in custody or under arrest at a traffic stop, the protection of *Miranda* arises; however, roadside questioning at a routine stop does not constitute such a custodial situation.[15] Any statement made by Razor was made in response to routine roadside questioning. No statement was taken after his arrest. There was no error.

Furthermore, the deputy was not required to give a *Miranda* warning before administering field sobriety tests. Field sobriety tests are not statements, so they are not inadmissible even if the accused was in custody and no *Miranda* warnings were given.[16]

4. Razor contends the trial court erred in refusing his request to charge the jury that it could find him guilty of the lesser included

---

[8] See *Patel v. State*, 240 Ga. App. 178, 179 (522 SE2d 760) (1999).

[9] See *Payne v. State*, 244 Ga. App. 734, 735 (3) (536 SE2d 791) (2000).

[10] See generally *Swearingen v. State*, 255 Ga. App. 85, 86 (1) (564 SE2d 498) (2002).

[11] See id.

[12] *Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990).

[13] *State v. Pastorini*, 222 Ga. App. 316, 317 (474 SE2d 122) (1996).

[14] Id.

[15] *Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986).

[16] *Morrissette v. State*, 229 Ga. App. 420, 421-422 (1) (a) (494 SE2d 8) (1997).

offense of *misdemeanor* habitual violator. Razor points to the revocation notice which showed that his license was being revoked for a minimum of five years from March 18, 1994. He argues that he believed his habitual violator status began in March 1994 (not in June 1995 when he was served), and that the revocation period therefore expired before he was stopped in February 2000. He urges that because the revocation period expired, the offense would be a misdemeanor rather than a felony.[17] This argument is without merit.

A charge on a lesser included offense is only appropriate when sufficient facts exist within the record to support such a charge.[18] The undisputed evidence presented to the jury shows that Razor received notice of the revocation in June 1995, and then drove less than five years later, which is a felony offense.[19] The trial court's failure to charge on the lesser included offense was not error because the evidence did not demand such a charge.[20]

5. The trial court did not err in finding that Razor was afforded effective assistance of counsel. According to Razor, trial counsel was ineffective because she (a) failed to properly consult with and advise him prior to trial; (b) failed to properly investigate the facts; (c) failed to properly object to the admission of certain exhibits; (d) failed to object to certain testimony; and (e) failed to request a jury charge on misdemeanor habitual violator or to object to the charge as given.

To reverse a conviction upon a claim of ineffectiveness of counsel, the defendant has the burden of proving not only that counsel's performance was deficient, but that the deficiency so prejudiced his defense that there is a reasonable probability that the outcome of the trial would have been different in the absence of the deficiency.[21]

(a) Razor complains that he only met or spoke with trial counsel four times. However, the amount of time defense counsel spent with Razor is not determinative of whether counsel rendered ineffective assistance.[22] We have found effective assistance where defendants met with trial counsel comparable numbers of times.[23] And, defense counsel testified at the hearing on the motion for new trial that Razor never requested any additional meetings. After reviewing the

---

[17] A nonlicensed habitual violator who drives within five years of notification of his status as such is punishable for a felony, whereas a nonlicensed habitual violator who drives more than five years after the notification of his status as such is punishable for a misdemeanor. *Hyde v. State*, 205 Ga. App. 754, 755 (1) (424 SE2d 39) (1992); OCGA § 40-5-58 (c) (1).

[18] See generally *Fowler v. State*, 188 Ga. App. 873, 874 (4) (374 SE2d 805) (1988).

[19] See OCGA § 40-5-60 (revocation becomes effective on the date the driver receives notice thereof); *Hyde*, supra.

[20] See generally *Tew v. State*, 246 Ga. App. 270, 273 (3) (539 SE2d 579) (2000).

[21] *Simmons v. State*, 251 Ga. App. 682, 691 (9) (555 SE2d 59) (2001).

[22] See *Fleming v. State*, 241 Ga. App. 61, 64 (2) (526 SE2d 91) (1999).

[23] See, e.g., *Cromartie v. State*, 241 Ga. App. 718, 719 (1) (a) (527 SE2d 228) (1999).

record and trial counsel's testimony concerning her trial preparation, we fail to see a reasonable probability that but for counsel's failure to discuss the case further with Razor, the trial's outcome would have been different.[24]

(b) Razor claims that counsel failed to properly investigate the facts, inasmuch as she did not investigate the actual date Razor was previously served with notice that he was a habitual violator or investigate the circumstances surrounding the changing of the dates on the notice. If, as Razor now contends, he was served in March 1994 rather than in June 1995, as shown on the notice, he could have told trial counsel; he cannot claim that trial counsel was ineffective for not getting that information from him. Moreover, the fact that he may have been served at an earlier date does not negate the fact that he signed a notice acknowledging he was (also) served on June 23, 1995. It is undisputed that Razor was driving within five years of that service date. Finally, the fact that some dates on the notice were crossed off and new dates were added was not material to Razor's case because the relevant date here was the service date,[25] and that date was not changed.

(c) Razor claims trial counsel was ineffective because she did not object to the admission of certified copies of a revocation notice dated October 1990, a revocation notice dated November 1998, and Razor's 1989-2000 driving record. Those documents were properly admissible as evidence.[26] In any event, the 1998 revocation notice and the driving record were not published to the jury. And, the fact that one of the revocation documents had an earlier revocation date would have worked to Razor's benefit, rather than to his detriment. Under the circumstances, Razor has shown neither deficient representation nor prejudice.[27]

(d) According to Razor, trial counsel was ineffective for not objecting to the deputy's testimony that: (1) closely following a dump truck was dangerous; (2) the dispatcher told him Razor had "countless DUI's"; (3) the other deputy advised him that Razor's test results showed Razor was under the influence of alcohol; (4) the deputy's partner wanted to conduct a urine test because he "felt there was an illegal substance in there"; (5) "[a] habitual violator suspension is usually for three DUI's in a five year period"; and (6) based on his observations, Razor was "under the influence of alcohol and drugs."

---

[24] *Fleming*, supra.

[25] See OCGA § 40-5-60; *England v. State*, 232 Ga. App. 842, 844 (2) (b) (502 SE2d 770) (1998).

[26] See *Valentine*, supra at 791 (2); *Evans v. State*, 190 Ga. App. 302, 303 (4) (378 SE2d 903) (1989).

[27] See generally *Allen v. State*, 272 Ga. 513, 516 (6) (b) (530 SE2d 186) (2000).

Even assuming trial counsel was deficient for not objecting to the testimony, Razor has failed to show how this deficiency harmed him. There was overwhelming evidence showing that he was driving under the influence of alcohol to the extent he was a less safe driver, and that he drove within five years of being served with notice of the revocation. Given this evidence, Razor has failed to show how the outcome of the trial would have been different absent his attorney's alleged errors.

(e) Counsel was not ineffective for failing to request or object to the court's failure to charge the jury on misdemeanor habitual violator when, as shown in Division 4, no such charge was authorized by the evidence.[28]

Thus, Razor has failed to demonstrate that trial counsel's performance fell below an objective standard of reasonableness and prejudiced his defense under the standard of *Strickland v. Washington*.[29] The superior court's finding that Razor was afforded effective assistance of counsel is not clearly erroneous. Consequently, it must be upheld.[30]

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JANUARY 14, 2003.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Jason E. Ashford, Amy E. Smith, Assistant District Attorneys*, for appellee.

---

[28] See generally *Tew*, supra.
[29] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); see *Williams v. State*, 267 Ga. 308, 311 (5) (477 SE2d 570) (1996).
[30] See *Ucak v. State*, 273 Ga. 536, 538 (2) (544 SE2d 133) (2001).